[S. F. No. 2955.   Department One.—November 21, 1904.]

# CITY OF OAKLAND, Respondent, v. ROLAND W. SNOW et al., Appellants.

CHARTER OF OAKLAND—COMPENSATION OF "AUDITOR AND ASSESSOR"—
SINGLE OFFICE—COMMISSIONS ON TAXES—LIABILITY ON OFFICIAL
BOND. — Under the charter of the city of Oakland, the office of
"auditor and assessor" is one single office, and the incumbent
thereof is only entitled to the salary fixed for that office, and he is
liable on his official bond for commissions retained on taxes col-
lected and not paid into the treasury.

ID.—DESCRIPTION OF OFFICE IN BOND—"EX OFFICIO ASSESSOR"—OBLIGA-
TION NOT AFFECTED.—Though the charter describes the office as that
of "auditor and assessor," and fixes the salary of the incumbent
as such, yet where it also provides that "the auditor shall be *ex
officio* assessor," and that there shall be elected "an auditor, who
shall be *ex officio* assessor," and the incumbent was elected as
"auditor and *ex officio* assessor," and the official bond was required
by the city council by the latter description, the description so
adopted in the bond is harmless, and does not affect the validity
of the obligation, which is the same in legal effect as if the officer
styled therein were "auditor and assessor," instead of "auditor and
*ex officio* assessor."

ID.—DUTIES OF OFFICER—CONSTRUCTION OF BOND.—The provisions of
the charter respecting the duties required of the officer are read into
the bond, and are to be construed in connection with it.  There is no
infringement of the strict rights of the sureties, by construing the
meaning of the terms employed in the bond in accordance with
recognized rules for the interpretation of contracts.

ID.—ADOPTION OF LAWS RESPECTING REVENUE AND TAXATION—COMPEN-
SATION NOT AFFECTED.—The adoption in the Oakland charter of
the laws of the state applicable to the assessment, equalization, levy,
and collection of taxes, and making the powers and duties of the
city assessor the same as those of the county assessor, did not
include any provisions of law respecting compensation for the col-
lection of taxes, nor affect the compensation of the "auditor and
assessor" as fixed by the charter.

ID.—ACTION ON BOND—FINDINGS—QUESTION OF LAW.—In the action
on the bond the findings are to be construed so as to sustain the
judgment.  A finding that the defendant collected the money "as
assessor" or "as *ex officio* assessor" is of the same legal import; and
a finding that he "failed to perform the official duties of such
office as *ex officio* assessor" is equivalent to a finding that he failed
to perform that portion of the duties of the office to which he was
elected and for which the bond was given.  It was a question of law

whether he was entitled to compensation for the collection of taxes, and an answer that he was so entitled did not raise an issue on which a special finding was required.

ID.—EVIDENCE PROPERLY EXCLUDED—CONSENT OF CITY—NOTORIETY OF CLAIM.—Evidence was properly excluded to show that the commissions on taxes collected were retained by defendant with the consent of the city, or that he declared prior to his election that he intended to claim the commissions, or that several city officials had approved of his act or consented thereto, and that it was a matter of public notoriety. The city could not consent to a violation of its charter or be estopped from claiming the money by the erroneous interpretation of its charter by its officials.

ID.—SUFFICIENCY OF EVIDENCE — AMOUNT RETAINED — CONVERSION. — Where the amount collected was shown, and the amount paid into the treasury during the term of office was shown, and there was no averment or evidence that any further amount had been paid, findings that plaintiff had failed to pay into the treasury the amount of the excess for which judgment was given, and that he appropriated the excess to his own use, were sufficiently sustained.

ID.—EXECUTION AND DELIVERY OF BOND—LOSS OF ORIGINAL—EVIDENCE —PRESUMPTION—SUPPORT OF FINDING.—Where the original bond was lost, and a copy was set out in the complaint and introduced in evidence, and the answer substantially admitted the execution of the original, and it was proved to have been delivered to the mayor, and by him to the city clerk, and was copied by the clerk into the register of official bonds, this, in connection with the presumption that official duty was regularly performed, is sufficient to support a finding that the original bond was executed and delivered to the city.

ID.—APPROVAL OF BOND NOT REQUIRED.—The original bond was a valid obligation of the principal and surety, without any approval by the mayor or city attorney.

APPEAL from a judgment of the Superior Court of Alameda County and from an order denying a new trial. S. P. Hall, Judge.

The facts are stated in the opinion.

T. C. Coogan, and C. H. Wilson, for Appellants.

James A. Johnson, City Attorney, and Seymour W. Condon, Assistant City Attorney, for Respondent.

HARRISON, C.—The plaintiff seeks by this action to recover from the defendants upon a bond executed by them for

the faithful performance by the defendant Snow of his official duties the sum of $1,868.32, alleged to have been received by him in his official capacity during his term of office and appropriated to his own use. Snow held the office of "auditor and assessor" of the plaintiff for two years, during the time for which the bond was given, and the moneys which the plaintiff seeks to recover are a portion of the taxes upon personal property collected by him by virtue of his office. Judgment was rendered in favor of the plaintiff, and the defendants have appealed therefrom and also from an order denying a new trial.

The collection of the moneys by Snow is not controverted, but the appellants claim that he has the right to retain the amount sued for as a commission allowed by law for their collection. On the other hand, the plaintiff insists that it was his duty to pay them into the treasury immediately upon their collection. The correctness of the judgment depends upon the construction to be given to various provisions of the charter of the city of Oakland (Stats. 1889, p. 514).

1. Section 44 of the charter provides: "The compensation of officers and employees of the city shall be per annum as follows: . . . auditor and assessor three thousand dollars"; and section 195 of the charter declares: "No office shall be created nor shall any person be employed in any capacity, nor shall any officer, clerk or employee receive any salary or compensation for any service of any kind unless the same is specially authorized by law or by this charter." Section 42 declares: "All fees and other moneys received or collected by any officer, agent or employee of the city (excepting only such fees as the city engineer may be authorized by ordinance to collect) shall be paid by such officer, agent or employee each month, or as much oftener as the council may require, into the city treasury for the use of the city." Under these provisions it is very clear that unless there is some law or some provision in the charter by which the defendant Snow is specially authorized to receive some compensation for his official services as such officer other than the salary above provided, he is not authorized to retain any moneys collected or received by him, but was required to pay them into the city treasury. The provision that "all moneys collected by any officer of the city shall be paid by such officer into the

city treasury for the use of the city'' is as comprehensive and as exclusive of any right to retain any portion of such moneys as is the provision of the charter of San Francisco, considered in *Matter of Dodge,* 135 Cal. 512.

The appellants, however, contend that in addition to his salary he is entitled, under the provision of section 137 of the charter, to compensation for his services in collecting taxes upon personal property at the rate of six per cent upon the amount so collected. That section is as follows: ''Except as in this article otherwise provided, the assessment of property taxable in the city for municipal purposes, the equalization of assessments and collection of taxes, and the sale of property for unpaid taxes, and the redemption of property sold for taxes, shall be made and had at the same time and manner, and with like effect as now or may be hereafter provided by law for the assessment of property, equalization of assessments, levy and collection of taxes, and sale of property for unpaid taxes for state and county purposes and redemption thereof; and all provisions of law applicable to such assessment, equalization, levy, collection and sale for state and county purposes are hereby applied to and shall be the law governing such assessment, equalization, levy, collection and sale for municipal purposes; and the respective officers of the city shall have, possess, and perform the same powers and duties in all matters concerning revenue and taxation for municipal purposes as are by law conferred or imposed upon county officers in matters concerning revenue and taxation for state and county purposes; and to that end:

''First. All powers and duties so by law conferred or imposed upon the county assessor, are hereby conferred and imposed upon the city assessor. . . .

''Sixth. All powers and duties so conferred or imposed upon the county clerk or county auditor are hereby conferred and imposed upon the city clerk and city auditor.''

By this section the framers of the charter, instead of setting forth in detail the several steps to be taken for raising revenue for the city, adopted certain provisions of the general laws of the state upon the same subject. They have provided that the provisions of the general laws which may from time to time be prescribed for taking certain proceedings in levying and collecting taxes for state and county purposes

shall be the law governing such proceedings in levying and collecting taxes for municipal purposes; and that the said proceedings in reference to municipal taxes shall be taken "at the same time and manner and with like effect" as may be prescribed by law for such proceedings in reference to state and county taxes; and that in taking these proceedings the officers of the city shall have the same "powers and duties" as are by law given to county officers in matters concerning taxation for state and county purposes.

The incorporation into a statute of the terms of a prior statute merely by reference thereto is governed by the same principles in interpretation as govern the interpretation of statutes—the primary object in all cases being to ascertain and carry out the intention of the legislature. Mr. Endlich (Interpretation of Statutes, sec. 73) says: "The words of a statute are to be understood in the sense in which they best harmonize with the subject of the enactment and the object which the legislature has in view"; and again in section 101 states as the rule, "An act adopting another by reference, does not adopt it beyond the purposes of the new act." Mr. Sutherland (Statutory Construction, sec. 241) says: "The application of particular provisions is not to be extended beyond the general scope of the statute unless such extension is manifestly designed"; and in section 257 says: "By the adoption of another statute, only such portion is in force as relates to the particular subject of the adopting act." The rule was stated by Ashurst, J., in *Rex* v. *Justices of Surrey*, 2 T. R. 510, to be, that "All the general powers and provisions given and made in acts *in pari materia* are to be considered as incorporated into the new statute, but that such provisions as are always considered as special provisions shall not." And in *Williams* v. *Ellis*, 6 Q. B. Div. 176, it is said: "Where the words employed by the legislature do not directly apply to the particular case, we must consider the object of the act." (See, also, *Queen* v. *Badcock*, 6 Q. B. 787; *Jones* v. *Dexter*, 8 Fla. 276; *Matthews* v. *Sands*, 29 Ala. 136; *Succession of D'Aquin*, 9 La. Ann. 400.)

There is nothing in section 137 aforesaid by which any officer of the city is "specially authorized" to receive compensation for his services, nor does the section make any reference to the compensation of officers. Article VIII of

the charter in which this section is contained is headed "Revenue and Taxation," and the manifest purpose of the framers of the charter in inserting this section therein was to provide a mode for raising revenue for the city from taxes upon property. The purpose of giving to the proceedings in reference to municipal taxes "like effect" to that given in the same proceedings in reference to state and county taxes, and the clothing of municipal officers with the same "powers and duties" in reference thereto as is given to county officers is, that by these proceedings a valid lien or charge for the tax may be imposed upon the property assessed, and that the officers may have ample authority for enforcing the collection of the tax. It would be an unwarranted as well as an unnatural construction to hold that by the use of these terms the framers of the charter intended to make any provision for the compensation of the officers.

Neither can the clause in the section declaring that all the provisions of law applicable to the collection of taxes for state and county purposes shall be the law governing such collection for municipal purposes be construed as authorizing the municipal officers to receive compensation for their services in reference thereto. There can be no presumption that it was intended to incorporate into the charter the provisions of law upon any subject other than those which are therein enumerated. By designating certain proceedings connected with taxation, in reference to which it has adopted the provisions of the general law applicable thereto, there is necessarily excluded from such adoption any provision applicable to proceedings not designated, and it is not to be held that by specifying the "collection" of taxes it has also adopted a provision of law for the compensation of officers for their collection, even though such provision for compensation is found in the same statute with the law for the collection of taxes. There is no necessary connection between the collection of taxes and the compensation of officers for their collection, nor do the provisions of law "applicable" to their collection presumptively include a provision for such compensation. These provisions for the collection of taxes are directed to the relation between the officer and the taxpayer and create the "power and duty" of the officer in reference to the collection of the tax.

The provisions of law applicable to the levying and collection of taxes are found in the Political Code, but the provisions for the compensation of officers are not contained in that code. Section 3829 of this code, under which the appellants claim the right to compensation, does not itself fix the compensation, but refers to the County Government Act for the purpose of ascertaining whether any compensation for such services shall be received. This section is not to be held as containing any provision of law applicable to the "collection" of taxes merely because it is found in a chapter relating to that subject, but its character is to be determined by the purpose which is expressed in it, and that purpose is limited to the compensation for the collection of taxes which is contained in the County Government Act. By reference to section 215 of the County Government Act (Stats. 1897, p. 572), it is seen that in a majority of the counties of the state compensation is allowed, but that in some counties the assessor is not entitled to any compensation for this service.

It cannot therefore be held that any portion of this section of the County Government Act was incorporated into the charter of Oakland by reason of the terms of the above section 137. Not only is there not in it any general provision of law applicable to the collection of taxes, but the provision therein for compensation upon which the appellants rely is not operative throughout the state, but is a special provision fixing the compensation of the assessor in certain counties. It was enacted by the legislature in conformity with the provisions of the constitution (art. XI, sec. 5), requiring the compensation of county officers to be regulated "in proportion to duties," and as it cannot be determined that the provision for those counties in which compensation is allowed is more entitled to consideration than the provision for those in which it is denied, it cannot be held that any portion of the section is available to the appellants.

2. It appears from the record herein that at the city election in 1897 the appellant Snow received a majority of the votes cast "for auditor and *ex officio* assessor" and was declared elected to that office, and that a certificate declaring that he was duly elected auditor and *ex officio* assessor of the city of Oakland was issued to him by the city clerk; that he

thereafter took and filed an oath that he would faithfully discharge the duties of auditor and *ex officio* assessor of the city of Oakland to the best of his ability, and that he acted as auditor and *ex officio* assessor of the city of Oakland from April 5, 1897, to April 1, 1899; that the common council of the city fixed the bond to be given by the "auditor and *ex officio* assessor" at ten thousand dollars; that thereafter, and before entering upon the duties of the office, he executed to the city of Oakland a bond with the other appellant herein as surety, in which, after reciting that the appellant Snow was on the eighth day of March, 1897, elected to the office of auditor and *ex officio* assessor in and for the city of Oakland, they bound themselves in the penal sum of ten thousand dollars that he would well and faithfully perform all official duties required of him by law, and would well and faithfully execute and perform all the duties of such office of auditor and *ex officio* assessor required by any law to be enacted subsequent to the execution of the bond.

It is contended by the appellants that under the charter of Oakland there is no office of "auditor and *ex officio* assessor," and for that reason the bond sued upon is void, and they have cited certain cases in support thereof which arose where the appointment of the officer was made without any authority therefor, or where the office itself had never been authorized by law. It may be conceded that a bond given for the faithful performance of the duties of an office that has no existence would not create any obligation. If there is no office there can be no official duty to perform and no violation of official duty. The cases cited by the appellant upon this point are therefore inapplicable to a case where the bond sued upon has been given for the faithful performance of the duties of a legally existing office by one who has been properly appointed or elected thereto.

It is further contended by the appellants that under the charter of Oakland the offices of auditor and assessor are distinct; that if it be assumed that the bond in question is a valid obligation for the faithful performance by Snow of his duties as auditor, it does not cover his duties as assessor, and that as the complaint charges only a violation of his duty as assessor there can be no recovery upon the bond. The cases cited by the appellants in support of this proposi-

tion arose where there were two legally existing and separate offices held by the same individual, and it was held that in the absence of a statute making his bond given for one office cover his duties and liabilities in both, his bond would cover only his defalcations in the office for which it was specifically given. In the revenue act of 1854 (Stats. 1854, p. 108), the legislature provided that in the several counties of the state the sheriff should be the tax-collector, and it was held in *People* v. *Edwards,* 9 Cal. 286, that inasmuch as the constitution required a tax-collector and sheriff to be elected in each county, it had thereby created the two offices, and although the legislature might provide that the same person should perform the duties of each office, it could not abolish either of the offices, and that the two offices were not by such provision blended into one. (See *Lathrop* v. *Brittain,* 30 Cal. 684.) It was under this provision of the constitution that it was held in *People* v. *Ross,* 38 Cal. 76, that the bond given by the defendant as surety did not cover his defalcation as tax-collector. In the County Government Act (Stats. 1883, p. 315, sec. 57), the legislature have specifically named the auditor and assessor as distinct officers of the county, but authorized the board of supervisors of any county to elect to consolidate the duties of the two officers. Section 59, however, provides that when they are so consolidated the person elected must give the bond required for each office.

There is no enumeration in the charter of Oakland of the several offices of the city, but article II, headed "Elections," which enumerates the officers to be elected, provides: "At each general election there shall be elected: . . . An auditor who shall be *ex officio* assessor." In the article upon the "Executive Department," section 40 is entitled "Auditor and Assessor," and declares: "The auditor shall be *ex officio* assessor" and then prescribes the duties required of him "as assessor" and his duties "as auditor." Section 44, entitled "Salaries of Officers," declares: "The compensation of officers and employees of the city shall be per annum: . . . The auditor and assessor three thousand dollars." Section 45, entitled "Official Bonds," declares: "Every officer provided for by law shall, before entering upon the duties of his office, file an official bond in such sum as the council may direct."

Under these provisions it must be held that the charter of

Oakland has not created the office of assessor as a distinct office from that of auditor, but that, by requiring the duties of such functionaries to be discharged by the same person, it has created a single office for the purpose of discharging those functions, which is styled in the charter "auditor and assessor"; that as there is no office of assessor distinct from the office of auditor, Snow was not required to give a bond for the faithful discharge of his duties as auditor, and another and separate bond for his duties as assessor, but that the bond set forth in the complaint was sufficient and applies to all of the duties required of him by virtue of his official position, and covers his defalcations in the moneys collected by him as charged in the complaint and found by the court. (See *People* v. *Leet*, 13 Ill. 269.)

The designation of Snow in the instrument as "auditor and *ex officio* assessor," instead of "auditor and assessor," is a trivial and harmless misdescription which does not affect the validity of the obligation. The charter itself declares that the auditor shall be *ex officio* assessor, and whether he styles himself auditor and assessor or auditor and *ex officio* assessor is immaterial. He is none the less assessor because he is only *ex officio* assessor, and being styled in the instrument auditor and *ex officio* assessor is the same in legal effect as if styled auditor and assessor. The bond that is given is the obligation of the individual whose duty it is to perform the duties of the office in his official capacity. The moneys collected by Snow were received by him by virtue of the official position to which he had been elected, and they are public moneys belonging to the city.

In so holding there is no infringement of the rule that a surety is entitled to stand upon the strict letter of his bond. The provision of the charter defining the duties of the officer are read into the bond and are to be construed in connection with it. The obligation of the surety is not extended beyond the fair import of the terms which it has employed in the instrument, but the meaning of those terms is to be construed in accordance with recognized rules for the interpretation of contracts. (See *People* v. *Breyfogle*, 17 Cal. 504.)

Upon the same consideration the objection of the appellants that the findings do not support the judgment must be overruled. Findings, as has been often decided, are not to be sub-

jected to the test of a special demurrer, but any ambiguity or uncertainty in them is to receive such construction as will sustain, rather than defeat, the judgment rendered thereon. The office of "auditor and assessor" which was held by Snow required of him the faithful performance of all the duties which the charter required of the incumbent of that office, irrespective of the particular designation of such duties or the capacity in which he was required to perform them, and the bond which was given by him extended to all of the duties required of him by virtue of his official position, whether these duties are required of him "as auditor" or "as assessor." The finding of the court that he collected the money "as assessor" or "as *ex officio* assessor" is of the same legal import, and the finding that he "failed to perform the official duties of such office of *ex officio* assessor" is equivalent to a finding that he failed to perform that portion of the duties of the office to which he was elected and for which the bond was given.

Whether Snow was entitled to compensation for his services in the collection of taxes is a question of law, and the allegation in the answer of the defendants that he retained the moneys sued for by reason of such right did not make an issue of fact which required a special finding, but is the question to be determined upon a consideration of the entire case.

3. There was no error in excluding the evidence offered on behalf of the defendants for the purpose of showing that the plaintiff had consented that Snow might have the compensation claimed by him. It was not competent for the city to consent to a violation of its charter, nor could the acquiescence of its officers confer upon Snow a right to compensation which the charter forbids him to receive. His declaration prior to his election that he intended to claim the commission, or the fact that he had previously retained like commissions, or that some of the city officials had approved of his act or consented thereto, or that it was a matter of public notoriety, did not, as against the provisions of the charter, confer upon him a right to the commissions, nor could the plaintiff be estopped from claiming the money collected by him by reason of an erroneous interpretation of the provisions of the charter by its officials. The objection in the brief of the appellants to the action of the court in striking out the portion of the

answer of Snow relative to this issue evidently results from an inadvertence of the record. Although the court did at an early stage of the case, upon motion of the plaintiff, strike this clause out, it afterwards, before the trial of the cause, vacated this order.

4. The finding that Snow had failed to pay into the treasury the amount for which the judgment was given is sustained by the evidence. The amount which he collected was shown, and the amount which he paid into the treasury during the term of his office was also shown. There was no allegation on the part of the defendants, or evidence in their behalf, that any further amount had been paid. The fact that he collected this amount of money in excess of the amount paid in by him sustained the finding that he appropriated it to his own use.

5. The finding that the bond was executed and delivered to the plaintiff was fully sustained by the evidence and the admission in the pleadings. Snow in his answer admits that he and the surety company executed it, and the surety company in its answer admits that Snow as principal and it as surety made and signed a certain bond, and that ·Snow took the bond away. It does not set forth the character or form of this bond, but, upon the ground that it has no information or belief upon the subject, denies that the bond set forth in the complaint correctly sets forth the bond signed by it and Snow, but does not allege wherein it is incorrect. Its averment in this respect is equivalent to an admission of the execution of a bond in all respects according with that set forth in the complaint, except the omission or misspelling of some immaterial word. Upon these same grounds it denies the delivery of the bond to the city by Snow. The inability of the plaintiff to produce the bond at the trial and its loss were clearly shown. Snow testified that he signed an official bond for that year with the other defendant as surety. Mr. Thomas, who was mayor, testified that Snow gave him the bond in question, and that he gave it to the city clerk, by whom it was copied into the register of official bonds. This copy was introduced in evidence. To this testimony must be added the presumption that official duty has been regularly performed. The bond was a valid obligation of the defendants without any approval by the mayor or city attorney.

We advise that the judgment and order denying a new trial be affirmed.

Cooper, C., and Gray, C., concurred.

For the reasons given in the foregoing opinion the judgment and order denying a new trial are affirmed.

Shaw, J., Angellotti, J., Van Dyke, J.