[No. F006987. Fifth Dist. Sept. 30, 1986.]

JUANITA PRICE, as County Clerk, etc., Petitioner, v.
THE SUPERIOR COURT OF MADERA COUNTY, Respondent.
JUNE WHEATLEY, as Superior Court Executive Officer, etc., et al.,
Real Parties in Interest.

**COUNSEL**

Fullerton, Lang, Richert & Patch and Bradley A. Silva for Petitioner.

Nutter, Bird, Marella, Boxer, Wolpert & Matz, Ralph H. Nutter, Adrian Kuyper, County Counsel (Orange), and Daniel J. Didier, Deputy County Counsel, as Amici Curiae on behalf of Petitioner.

Blumberg, Kerkorian, Andreen, Seng & Ikeda and Kenneth Andreen for Respondent and for Real Party in Interest Wheatley.

Dorothy Seals and Lynda Allison, in pro. per., for other Real Parties in Interest.

---

OPINION

**WOOLPERT, J.—**

INTRODUCTION*

By way of petition for extraordinary relief we are asked to nullify the respondent superior court's transfer of four court clerks from the office of the petitioner county clerk to the court's staff pursuant to Government Code section 69898.[1]

The lines are starkly drawn. The clerk contends she is a constitutional officer whose position may not be jeopardized by statute. Although she must supply court-related services, she remains the responsible employer of the clerical personnel she assigns to the superior court. In contrast, the court justifies its action by its own reading of the Constitution and statutory history, and denies its action has impermissibly diminished the office of the county clerk.

Says the counsel for respondent: "Only the superior courts have labored under a system which denies the judges the control necessary to enable them

---

*The court permitted amici curiae briefs to be filed on behalf of respondent by the California Association for Superior Court Administration, and by the following superior courts: Orange County Superior Court; San Diego County Superior Court, San Joaquin County Superior Court, and Solano County Superior Court.

[1]All statutory references are to the Government Code unless otherwise indicated.

. Section 69898 provides in pertinent part: "Notwithstanding any other provision of law, a superior court having an executive or administrative officer may, by local rule, specify which of the powers, duties and responsibilities required or permitted to be exercised or performed by the county clerk in connection with judicial actions, proceedings and records shall be exercised or performed by the executive or administrative officer. The county clerk shall be relieved of any obligation imposed on him by law with respect to these specified powers, duties and responsibilities, to the extent the local rule imposes on the executive or administrative officer the same powers, duties and responsibilities." (§ 69898, subd. (d).)

to function efficiently[,]" a reference to the fact municipal and appellate courts have their own clerks. (§§ 68840, 69140 and 71280.4.)

Replies the clerk: "Although Respondent styles its argument as dealing with efficiency, the underlying theme is power."

Amicus California Association for Superior Court Administration summarizes: "Courtroom clerks are, therefore, caught between two authorities: the Judges of the Superior Court to which they are assigned and the County Clerk who employs them. Personnel systems which apply to courtroom clerks are fraught with problems related to these divergent authorities."

Underlying these concerns regarding efficiency, power and divergent authorities, is the significance of a longstanding constitutional provision[2] naming the county clerk the ex officio clerk of the superior court. Because the county clerk is identified in the state Constitution in this fashion we will assume the office has constitutional status. However, we will conclude the action of the court was permissible under both a constitutional and statutory analysis.

## FACTS

The request for extraordinary relief arises out of local Rules of the Superior Court, County of Madera, adopted by the court on June 28, 1985, and amended, effective April 8, 1986. Petitioner seeks relief from implementation of subdivision 3.1 of Rule 3 (hereafter Rule 3), which provides:

"3.1 Pursuant to the authority contained in Government Code Section 69898, the Court hereby transfers from the County Clerk to the Superior Court Executive Officer, under the direction of the Presiding Judge, the powers, duties and responsibilities of the County Clerk as Clerk of the Superior Court with respect to the employment and supervision of personnel whose principal activities are to serve the courts in the following capacities:

"Four Superior Court Clerks who will perform the following functions:

"Superior Courtroom Clerk, Department #1,

"Superior Courtroom Clerk, Department #2,

---

[2]California Constitution, article VI, section 4, provides: "In each county there is a superior court of one or more judges. The Legislature shall prescribe the number of judges and provide for the officers and employees of each superior court. If the governing body of each affected county concurs, the Legislature may provide that one or more judges serve more than one superior court.

"The county clerk is ex officio clerk of the superior court in the county."

"Juvenile Courtroom Clerk, to serve Department #1 and Department #2,

"Superior Courtroom Clerk, to serve Department #1 and Department #2 as needed and to act as a Calendar Clerk."[3]

## DISCUSSION[4]

### I. *The Statutory Authority (§ 69898)*

■ The clerk relies on *St. John* v. *Superior Court* (1978) 87 Cal.App.3d 30 [150 Cal.Rptr. 697]. There, the appellate court struck down a local rule of court which brought *all* court-related clerical staff under the control of the Orange County Superior Court's executive officer. According to respondent, *St. John* reached a "ridiculous result [which] was unintended by the Legislature."

Respondent relies on *Service Employees Internat. Union* v. *Superior Court* (1984) 161 Cal.App.3d 1005 [208 Cal.Rptr. 48] (*S.E.I.U.*). In *S.E.I.U.*, a local rule purported to transfer *only* courtroom clerks and the probate examiner to the court's staff. While the appellate court in *S.E.I.U.* did not consider that the local rule's effect was relevant to the disposition of the case, it remarked: "Local Rule 25 represents a proper exercise of authority delegated to superior courts by virtue of Government Code section 69898 (cf. *St. John* v. *Superior Court* (1978) 87 Cal.App.3d 30, 36-42 [150 Cal.Rptr. 697])." (*Id.* at p. 1008.)

Petitioner discounts the importance of the *S.E.I.U.* dictum. We do note its apparent inconsistency with *St. John,* but do not rely on *S.E.I.U.* for our analysis and conclusion.

In *St. John* the county clerk challenged the constitutionality of section 69898 (*ante,* fn. 1) in light of article VI, section 4 (*ante,* fn. 2), naming the county clerk the ex officio clerk of the superior court. The court reasoned: "Article VI, section 4 provides that the county clerk is ex officio clerk of the superior court of the State of California in his particular county. This

---

[3]Amici inform us other superior courts either have adopted or are contemplating the adoption of a similar rule.

[4]A minor challenge is made to the time sequence in which the rule was adopted. However, we find the contention meritless. This matter has been before us on previous occasions, with the result the issue is now before us after substantial compliance with procedural requirements. Counsel for petitioner has also requested attorney fees. Under the facts of this case and in light of our holding, an award of such fees to petitioner would be inappropriate. (Code Civ. Proc., § 1021.5; *County of Inyo* v. *City of Los Angeles* (1978) 78 Cal.App.3d 82, 86-90 [144 Cal.Rptr. 71].)

simply means that the county clerk is also the clerk of the superior court. It makes no difference whether the law declares in terms that the county clerk shall also be the clerk of the superior court, or declares that the clerk shall be ex officio clerk of the superior court. (See *People* v. *Durick* (1862) 20 Cal. 94, 95.) The clerk of the superior court therefore is by article VI, section 4 a constitutional officer, and not subject to appointment or removal by the court. (See *Houston* v. *Williams* (1859) 13 Cal. 24, 28.) . . . [T]he two offices are separate and distinct offices. 'Where a public officer is declared by law by virtue of his office—*ex officio*—to be also the incumbent of another public office, the two offices are as distinct as though occupied by different persons.' (*Union Bk. & Tr. Co.* v. *Los Angeles Co.* (1934) 2 Cal.App.2d 600, 608-609 . . . .)" (*St. John* v. *Superior Court, supra,* 87 Cal.App.3d at pp. 36-37.)

The court went on to find the Legislature carefully maintains the purported distinction between the offices by making specific references to "county clerk" and "clerk of the superior court." (*St. John* v. *Superior Court, supra,* 87 Cal.App.3d at pp. 37-39.) The court then continued: "In view of the legislative recognition of the county clerk-superior court clerk dichotomy, we cannot assume that the reference in Government Code section 69898, subdivision (d) to the 'county clerk' instead of the 'clerk of the superior court' was inadvertent. . . .

"Read in this manner there is no question that the Legislature acted within constitutional limits in enacting section 69898. The section simply authorizes a superior court to transfer from the county clerk to the court's executive officer functions performed by the county clerk (as county clerk) in connection with judicial actions, proceedings and records. *The transfer of functions prescribed by law to be performed by the clerk of the superior court are not within the authority granted by section 69898.*" (*St. John,* at p. 39, italics added.)

The duties which *St. John* determined are *not* transferable by section 69898 are described as follows: "The superior court clerk is charged with the following duties: to attend each session of the superior court in his county (Gov. Code, § 69841), to keep plaintiff and defendant indexes (Gov. Code, § 69842), to issue all process and notices required by law to be issued (Gov. Code, § 69843), to keep superior court minutes, and enter all orders and judgments (Gov. Code, § 69844), to keep a register of actions (Gov. Code, § 69845), and to safely keep or dispose of according to law all papers or records filed or deposited with the court (Gov. Code, § 69846)." (*St. John* v. *Superior Court, supra,* 87 Cal.App.3d at p. 39.)

Therefore, *St. John* is a direct holding that section 69898 does not authorize the type of transfer ordered by the respondent court in this case.

## A. *"Ex Officio" Status*

Our disagreement with *St. John* begins with its characterization of "ex officio" offices. The use of "ex officio" does not necessarily indicate an intent to create or maintain two distinct offices. From California's earliest days, courts have interpreted "ex officio" in the context of the occasion. If the enabling act or Constitution called for two elective offices, or otherwise made it clear that no melding of offices was intended, the solution was to find the offices to be distinct. In those cases, the courts held the duties were assigned to the office holder of the designated office in question. For example, in *People* v. *Durick* (1862) 20 Cal. 94, a case cited by *St. John,* the two elective offices of county clerk and county recorder were found to be distinct even though they could be held by the same person.

On other occasions our high court has interpreted "ex officio" to mean two offices blended into one. In *City of Oakland* v. *Snow* (1904) 145 Cal. 419 [78 P. 1060], Oakland's charter provided for the election of an "'auditor who shall be *ex officio* assessor.'" (*Id.* at p. 427.) The court held "by requiring the duties of such functionaries to be discharged by the same person, it has created a single office . . ." and only one bond was required. (*Id.* at p. 428.) It distinguished *People* v. *Edwards* (1858) 9 Cal. 286, in which offices were held to be distinct because the Constitution required a tax collector and a sheriff to be elected in each county. In the *Edwards* situation, the two offices could be held by one person but would remain separate even though the duties of one were assigned to the other. Neither office could be abolished by legislation.

*St. John* overlooks *City of Oakland, supra,* 145 Cal. 419, and other cases of a similar nature. Instead, the *St. John* court relies principally upon *Union Bank & Tr. Co.* v. *Los Angeles Co.* (1934) 2 Cal.App.2d 600 [38 P.2d 442] (*Union Bank I*), disapproved on another point in *Minsky* v. *City of Los Angeles* (1974) 11 Cal.3d 113, 123, footnote 5 [113 Cal.Rptr. 102, 520 P.2d 726].

In *Union Bank I* the court held the county not liable for the county clerk's failure to return money to its owner who had placed it in the custody of the superior court clerk. In a far too general statement, the court stated, "Where a public officer is declared by law by virtue of his office—*ex officio*—to be also the incumbent of another public office, the two offices are as distinct as though occupied by different persons." (*Union Bank I,* at pp. 608-609.) It cited nine cases for that conclusion. Of those, seven were decided by the high court. Five concerned sheriff and tax collector problems. One arose because the superintendent of schools had been elected to the school board. The last, *Durick,* we have previously mentioned. In each case, the courts

concluded the offices involved were distinct, but not until they found reasons *why* the offices must be kept separate.

Four years later, in *Union Bank & Trust Co.* v. *Los Angeles* (1938) 11 Cal.2d 675 [81 P.2d 919] (*Union Bank II*), our high court reversed the trial court's ruling that the county clerk and his sureties could not be held liable for the same loss. Prior to reversing, the state Supreme Court expressed, in all frankness, its wish to avoid the consequences of not holding the county clerk responsible. (*Id.* at pp. 677-678.)

Counsel in our case interpret *Union Bank II* with obvious bias. Respondent finds it was a polite rebuke of the lower court's holding in *Union Bank I,* since the high court failed to even cite the earlier case. Petitioner believes the court did not find the offices combined into one.

Given such disagreement, one prudent course would be to turn to the much respected legal analyst Bernard Witkin for his construction of the holding. Witkin sets forth the holdings of (1) *Union Bank II,* (2) a Court of Appeal case relying on *Union Bank I,* and (3) *St. John.* (2 Witkin, Cal. Procedure (3d ed. 1985) Courts, § 285, p. 308.) He characterizes the high court's *Union Bank II* opinion as holding "[t]here is no separate office of clerk of the superior court; the *county clerk* is *ex officio* clerk of the superior court of his county, and it is one of his official duties as county clerk to act as clerk of the court." (*Ibid.*)

We note *Union Bank II* has an alternate justification for its decision. *Union Bank II* refers to a surety law doctrine applicable when "the principal also holds a second office. . . ." (*Union Bank II,* at p. 678.) Nevertheless, we agree with Witkin's conclusion in view of the court's contention-conclusion language. The contention: "It is contended that these are separate and distinct offices; that defendant Lampton received the money in question as clerk of the superior court and not as county clerk; . . ." (*Union Bank II,* at p. 677.) The conclusion: "In examining *this* contention, it may be well to bear in mind the consequences thereof." (*Ibid.,* italics added.) The consequences, or alternatives, "must be rejected . . . ." (*Id.* at p. 678.)

The high court reasons that the holder of the constitutional office of county clerk has the duty to "act" as clerk of the superior court. "It follows that in his activities as clerk of the superior court defendant Lampton was carrying out the duties imposed by law upon him as county clerk, . . ." (*Ibid.*) Notably, *St. John* makes no reference to *Union Bank II.* We conclude the single office issue was resolved by *Union Bank II,* contrary to *Union Bank I* and *St. John.*

As an aside, however, we add that the Constitution has been amended and revised since *Union Bank II*. No longer does the clerk appear in the Constitution, along with other county officers, as a named constitutional officer. The only county officer specifically named is the "elected county sheriff." (Cal. Const., art. XI, § 1, subd. (b), as adopted June 6, 1978.)[5]

Presumably, the purpose in eliminating specifically named county officers was to provide the Legislature with more freedom: "The Legislature or the governing body may provide for other officers . . . ." (Cal. Const., art. XI, § 1, subd. (b).)

However, we need not decide whether by this amendment there was an intent to deprive the county clerk of all constitutional office status. A recommendation of the 1963 Constitutional Revision Commission to delete the separate reference to the county clerk as ex officio clerk of the superior court in article VI, section 4, was not adopted. (Cal. Const. Revision Com., Proposed Revision (Feb. 1966) pp. 82, 102, 104, 185-186.) Arguably, the reference is a modest one in view of the limited, ministerial character of the duties of the office relating to court services. In any event, the Constitution still assigns the county clerk the duties of clerk of the superior court; we must now determine to what extent that assignment may be diminished.

### B. *Statutory Nomenclature*

In *St. John* the court looks to the various codes which mention the "county clerk" and "clerk of the superior court" and finds a purposeful use of these words. The conclusion is that the Legislature recognized the "county clerk-superior court clerk dichotomy" and therefore used the descriptive words in section 69898, subdivision (d), with the dichotomy in mind. (*St. John, supra,* 87 Cal.App.3d at pp. 37-39.) We disagree.

Rather, it appears the labels have been selected due to the placement of the assigned duties of the clerks in the various codes, and to distinguish the clerks of the different courts. As a means of identifying an office, for example, section 24000 names a "county clerk" but not a "clerk of the superior court." Yet under the title "Courts," the code refers to particular clerks in particular courts. Thus, there is a "Clerk of the Supreme Court" (§ 68840), and a "clerk of the [municipal] court" (§ 71280.4), while at the

---

[5]At the time of *Union Bank II* the Constitution provided in relevant part: "The Legislature, by general and uniform laws, shall provide for the election or appointment, in the several counties, of boards of supervisors, sheriffs, county clerks, district attorneys, and such other county, township, and municipal officers as public convenience may require, and shall prescribe their duties, and fix their terms of office. . . ." (Cal. Const. of 1879, art. XI, § 5; compare, *ante,* fn. 2.)

same time "clerk of the superior court" is mentioned consistently and frequently. (§§ 69841-69847.)

## C. *Legislative History*

Next we find strange indeed the *St. John* view that the Legislature intended section 69898 to authorize superior courts to assume only those county clerk functions *least* related to the operation of the court. In support of its view, *St. John* referred to a part of the legislative history of section 69898. Our investigation reveals the history is to the contrary. There were many legislative reports on the subject. For example, in the report on Assembly Bill No. 4071 the Senate Committee on Judiciary specifically referred to certain duties the *St. John* court later concluded were *not* subject to transfer. (Sen. Com. Rep. on Judiciary (1975-1976 Reg. Sess.) pp. 1-3, hereafter Sen. Com. Rep.) In comment 3 of the report, we find: "The bill clarifies the roles of superior court administrators and county clerks. The proponents state that superior court judges have indicated that existing law regarding *court clerks* inhibits practical allocation of duties between clerks and administrators, in that, under present law, the clerks are responsible for such administrative matters as keeping indexes, and keeping the *minutes* and other records of the court (Sec. 69841, et seq., Gov. C.). The proponents state that the law should allow the *courts* to decide on an individual basis how that particular court should be administered." (Sen. Com. Rep., *supra*, at p. 2, com. 3, italics added.)

In addition, we have traced the source of the words used to amend section 69898 to the Judicial Council of California. We refer to the council's 1976 report to the Governor and the Legislature. The report fully discussed the effort to provide superior court administrators with more direct control of court-related functions of the county clerk. The council's suggested language is precisely the language enacted in 1976. In its introduction to the proposed text, the council made no distinction between the different duties of the county clerk which are found in the various codes. In fact, the Judicial Council clearly referred to the court-related duties which *St. John* holds are *not* covered: "The presiding judges of superior courts having executive officers have found that there is an ambiguity as to the proper allocation of functions between executive officers and *clerks of court,* and some overlap between those functions. *Clerks of court* are assigned various specific duties by statutes which predate the use of court administrators. In some cases those duties are related to the areas where court administrators have particular training and expertise. It is therefore recommended that each superior court having an executive officer be authorized to allocate duties, by local rule, between the clerk and the court administrator, notwithstanding other provisions of law. Should a superior court wish to allocate the clerk's record-

certifying functions to the administrator, however, his certifications might be questioned in other states when the certification of 'the clerk' is required. The proposed statute, therefore, would also give the administrator the authority of a clerk of the superior court." (Judicial Council of Cal., Ann. Rep. (1976) ch. 4, p. 43, italics added.)

Clearly, *St. John* misconstrues the legislative intent. The intent was to promote efficiency in the operation of the superior courts by authorizing a more practical allocation of functions between the court executive officer and county clerk. The duties of the county clerk in reference to the courtroom and calendar services were not excluded. To the contrary, these duties were of particular significance to the authors of the legislation. We find no support for the idea that the Legislature intended to limit the section 69898 authority to those county clerk functions least related to the daily operation of the court.

*St. John* indicates its probable contrary holding had the full legislative history of section 69898 been before it. Quite correctly the court notes in dictum what we find to be the fact: "This is not to say that the Legislature could not, if it had elected to do so, have enacted a law diminishing the duties of the superior court clerk, and allocating to the executive officer certain duties previously performed by the clerk. Since, as we have previously observed, the Legislature is generally entrusted with the authority to prescribe the powers and duties of the office, those powers and duties may be increased or diminished, provided that, in the case of a constitutional office, a proper distinction is maintained between diminution of duties and destruction of the office. (See *Ward* v. *Whitfield* (1931) 224 Ala. 277 [139 So. 277, 278].)" (*St. John* v. *Superior Court, supra,* 87 Cal.App.3d at p. 40.)

## II. *Separation of Governmental Powers*

Even if we accept the *St. John* conclusion that section 69898 authorizes only the transfer of duties *not* assigned to the "clerk of the superior court," the Madera County rule can nevertheless be upheld under the doctrines of separation of powers and inherent judicial power.

The California Constitution provides there shall be a separation of powers into three departments. Generally each branch of government is free from the exercise or interference of the powers by the others, subject to *express* constitutional authority to the contrary. (Cal. Const., art. III, § 3.) Therefore, it is arguable the continued reference in the Constitution to the county clerk as ex officio clerk of the superior court gives the county clerk some

authority for engaging in mixed executive-judicial exercises of power. We conclude nevertheless there is no evidence to support such an argument here.

"A construction should not be given to a statute, if it can be avoided, which will lead to absurd results, or to a conclusion plainly not contemplated by the legislature." (*Merced Bank* v. *Casaccia* (1894) 103 Cal. 641, 645 [37 P. 648].) The same rule applies to a constitutional amendment. (*Bakkenson* v. *Superior Court* (1925) 197 Cal. 504, 510 [241 P. 874].)

No one has provided us with evidence of the reason why this purely ministerial, clerical function continues to be assigned, by constitution, to a member of the executive branch of government.

Respondent simply looks to the practical problems inherent in population growth for its explanation. There are now living in Madera County about the same number of people as were living in all of California in 1849. Since the original district courts served few people and had only one or two judges, the argument goes, someone had to provide the clerical services. The assignment of the duties of ex officio superior court clerk to the county clerk was a sensible solution. (See Cal. Const., as amended in 1862, art. VI, § 11.) Today, however, the complexity of court administration does not comport with the original intent of merely providing the court with simple clerical services.

While respondent's analysis makes sense, it does not account for the continued constitutional assignment of the county clerk to that function. Even so, if we view the constitutional assignment realistically as one intended to provide the court with desired assistance and nothing more, the inviolability of the constitutional assignment is weakened. This is particularly so when the inherent powers of the judiciary are brought into the equation.

Perhaps the strongest protestation concerning the independence of the judiciary appears in *Houston* v. *Williams* (1859) 13 Cal. 24. There, counsel for the plaintiff asked the high court for a written opinion with reasons. Without any reticence, Justice Field reacted emphatically to the attorney's citation of a *statute* requiring reasoned decisions in writing: "The truth is, no such power can exist in the Legislative Department, or be sanctioned by any Court which has the least respect for its own dignity and independence. In its own sphere of duties, this Court cannot be trammeled by any legislative restrictions. Its constitutional duty is discharged by the rendition of decisions." (*Id.* at p. 25.)

"Legislation, which could take from its control its records, would leave it impotent for good, and the just object of ridicule and contempt. The

Clerk, it is true, is a constitutional officer—not subject to appointment or removal by the Court—but subject, in the control of the records, to its orders. It is true the Court cannot, without great abuse of its powers, take, directly or indirectly, from the Clerk, the perquisites of his office for copies of opinions, and papers on file, nor authorize the destruction or mutilation of any of the records, but, subject to these limitations, it must necessarily exercise control that justice may be done to litigants before it." (*Id.* at p. 28.) Forty-five years later the requirement of written appellate opinions with reasons became a part of the Constitution. (Cal. Const., art. VI, § 24.)

Absent constitutional restrictions, courts continue to have inherent power to conduct their assigned business without interference from the other branches of government: "A court set up by the Constitution has within it the power of self-preservation, indeed, the power to remove all obstructions to its successful and convenient operation. This arises from the fact that it is part of and belongs to one of the three independent departments set up by the Constitution, article VI, section 1. This power is recognized, among other places, in sections 47 [former Code Civ. Proc., § 47, repealed 1953, now Gov. Code, §§ 68801, 68802, 68803] and 144 [former Code Civ. Proc., § 144, repealed 1953, now Gov. Code, § 68073] of the Code of Civil Procedure. While the above statement is true, there is this qualification thereof, which has been recognized at all times in this state—the legislature may at all times aid the courts and may even regulate their operation so long as their efficiency is not thereby impaired.

"In *Brydonjack* v. *State Bar,* 208 Cal. 439 [66 A.L.R. 1507, 281 Pac. 1018, 1020], this court said: 'Our courts are set up by the Constitution without any special limitations; hence the courts have and should maintain vigorously all the inherent and implied powers necessary to properly and effectively function as a separate department in the scheme of our state government. (*In re Garner,* 179 Cal. 413 [177 Pac. 162]; *Nicholl* v. *Koster,* 157 Cal. 416 [108 Pac. 302].) . . . The sum total of this matter is that the legislature may put reasonable restrictions upon constitutional functions of the courts provided they do not defeat or materially impair the exercise of those functions.'" (*Millholen* v. *Riley* (1930) 211 Cal. 29, 33-34 [293 P. 69].)

In *Brydonjack* v. *State Bar,* cited in *Millholen, supra,* 211 Cal. 29, the high court noted its deference to legislative solutions: "Of necessity the judicial department as well as the executive must in most matters yield to the power of statutory enactments." (*Brydonjack* v. *State Bar* (1929) 208 Cal. 439, 442 [281 P. 1018, 66 A.L.R. 1507].) Inevitably, courts are required to "set the stakes along the common boundary between these zones. of power." (*Id.* at p. 444.) In doing so the high court "has explicitly eschewed

the 'meat ax' approach . . . and has instead applied harmonizing principles in dealing with overlapping jurisdictional schemes . . . ." (*Pacific Legal Foundation* v. *Brown* (1981) 29 Cal.3d 168, 199 [172 Cal.Rptr. 487, 624 P.2d 1215].)

We return to the facts of *Millholen* for an application of these principles. In that case, a secretary had been appointed by one of the Courts of Appeal. The state Controller refused to authorize payment of her salary on the theory the Department of Finance had general supervision over the financial and business policies of the state. The court concluded that within reasonable limitations the Legislature may provide for the appointment and compensation of court assistants, and "relieve the court of the burden of choosing such persons." (*Millholen* v. *Riley, supra,* 211 Cal. 29, 34.) Finding no such legislative provision, the court held it was proper for the appellate court to make the appointment under its inherent power.

The particular relevance of *Millholen* to this case is twofold. First, as mentioned, separation of powers is not offended by legislation reasonably permitting the executive officers of government to appoint and compensate court assistants. This is not a one-sided rule. By the same reasoning, despite petitioner's claim that sole appointment power rests with the county clerk, legislation could delegate to the court the limited authority to select assistants of the county clerk, such as those working with the court, without making them court employees. However, pursuant to the broad authority of section 69898, Rule 3 goes further and effects a complete transfer of the personnel to the court staff.

Second, *Millholen* refers to inherent power and finds it appropriate that the Legislature did *not* delegate the appointment power of court secretaries to another branch of government.

"This, indeed, is as it should be. A law secretary is called upon to do work of a highly specialized and confidential character. Such a person must possess certain legal attainments as well as certain powers of discretion and discernment that may not be so readily recognized or appraised by another as by a member of the judiciary. Besides, such person necessarily must have advance knowledge of decisions and judgments of the court. For these and many other reasons that could be assigned, we have no doubt that it was the intention of the legislature to leave both the appointment and the compensation of law secretaries to the courts they serve. Of course, respondents have the power of audit of petitioner's claim, but this is far from being authorized to appoint her or to fix her compensation." (*Id.* at pp. 34-35, italics added.)

The *Millholen* court cites *State* v. *Cunningham* (1909) 39 Mont. 165 [101 P. 962], for its "profound discussion of the inherent power of the court" under similar circumstances. (*Millholen* at p. 34.) Because of similarities in the duties of the Montana appellate court "stenographer" and the calendar and courtroom clerks working in California superior courts, we borrow the apt observations of the Montana Supreme Court: "In many respects the duties of the stenographer employed by this court are peculiar, and cannot be performed by one who does not possess special qualifications. In the first place, he must possess the requisite mechanical skill, not only to take stenographic notes during the preparation of written opinions by the different members of the court, but, after they have been prepared, he must reduce them to suitable form in type to become a part of the permanent records of the court. In doing this it is often the case, because of his fitness and knowledge, that he must verify citations by inserting the proper page, title, and volume. It is also often the case that he must take stenographic notes of oral testimony of witnesses upon hearings had in this court. He must be, then, not only a skillful mechanic, but an intelligent helper. During the progress of his work he occupies towards the members of the court not only close personal relations, but enjoys, in connection with his work, their utmost confidence, because of necessity he must know beforehand the result in every decision often many days or weeks before it is made public. It is therefore within his power, either from corrupt motives or by inadvertence or lack of discretion, to betray this confidence, and thus become the source of great public disorder and mischief. This intimate relation cannot be avoided. Hence the particular person who is the depositary of the court's confidence must not only be honest and trustworthy, but also careful, industrious, and discreet. His personal habits, associates, and mode of life must also be taken into account; for, though one may be ever so skillful and honest, daily contact with him might be objectionable, because his standard in these respects might be too low. The people are entitled to the best service the court can afford, not only in the work done by its members individually and collectively, but also by the employees under its control. They are entitled to have its business conducted with dispatch; hence attentive and effective industry in its employees is indispensable. For the accomplishment of this end the court is entirely and solely responsible, and, if there be shortcoming or failure, either in the intellectual or mechanical quality of its work, it alone is to blame.

"In view of these considerations, it is manifest that the power to select the proper employees could not with propriety be vested elsewhere than in the court itself; and it is equally manifest that the power to say whether it *may or may not be* necessary to have assistance, and what the qualifications of the assistants shall be, may not be vested elsewhere." (*State* v. *Cunningham, supra,* 39 Mont. at pp. 169-170 [101 P. at p. 964].)

The importance of a skilled calendar clerk to trial management cannot be questioned. The new trial judge is immediately warned of the perils of poor calendar management and the consequences when speedy trial and five-year statutes are not faithfully observed. Some of the superior court's most distressing contacts with the public concern calendar uncertainties and delays.

The courtroom clerk may appear to some only as a person who calls the roll of jurors, reads the information to the jurors, swears witnesses and records the verdict. Not so. "The clerk of the court is an assistant whose principal duty it is to make a correct memorial of the court's orders and directions." (*Peoples Ditch Co.* v. *Foothill Irr. Dist.* (1932) 123 Cal.App. 257, 261 [11 P.2d 86].) The complex procedures which this entails in some courts is described in *Desherow* v. *Rhodes* (1969) 1 Cal.App.3d 733, 739-741 [82 Cal.Rptr. 138], questioned on another point in *Hollister Convalescent Hosp., Inc.* v. *Rico* (1975) 15 Cal.3d 660, 670-671 [125 Cal.Rptr. 757, 542 P.2d 1349].

Often, court orders are found in the minutes and are not reduced to formal documents signed by the court. "The act of instructing the clerk to enter the order in the minutes, whether in chambers or on the bench, followed by entry in the minutes is the equivalent of signing a formal order and filing it with the clerk." (*Simmons* v. *Superior Court* (1959) 52 Cal.2d 373, 379 [341 P.2d 13].) On appeal, reference is frequently made to the minutes in order to discover information of consequence.

Emphasis of the important duties performed by the court clerk would be incomplete if the clerk's relationship to the judge were not mentioned. Constant reliance must be placed on the skill, attention and faithfulness of the courtroom staff. This occurs not only in the courtroom, but also in chambers where much court business is conducted. Not all judges have personal secretaries, secretarial pools sometimes being an economic alternative. In such cases the judge may be even more dependent on the clerk's assistance and confidence.

Finally, because of the urgency of much of the judge's work, the presence of the clerk is not only important while the courtroom is dark, but also the subject of interoffice dispute if the county clerk requires the courtroom clerk to be elsewhere. Equally disturbing to the judge is the appearance of a substitute clerk unfamiliar with the judge's court practices. Arguably, these problems are better solved by the discreet use of section 69898 than by conferences with the county clerk and resort to court orders.

With these observations in mind, we might simply conclude under the inherent powers doctrine that superior court clerks may be transferred to

the superior court staff when the court finds such an arrangement necessary to its effective functioning. This is unnecessary. Section 69898 provides a broad, general statutory authority. Its use in this case reasonably harmonizes the particular court's needs with the undefined perquisites of the office of the county clerk as ex officio clerk of the superior court. We reach this conclusion while fully aware of the need for judicial restraint: "Judges must be as vigilant to preserve from judicial encroachment those powers constitutionally committed to the executive as they are to preserve their own constitutional powers from infringement by the coordinate branches of government." (*People* v. *Superior Court (Greer)* (1977) 19 Cal.3d 255, 262 [137 Cal.Rptr. 476, 561 P.2d 1164].)

Although Rule 3 diminishes the duties of the county clerk, it does not destroy that office. (*St. John* v. *Superior Court, supra,* 87 Cal.App.3d at p. 40.) If there is a judicial encroachment upon the office of the county clerk, it is a reasonable one. Whether the statute or the nonstatutory principles we have cited would permit a greater diminution of the county clerk's court-related powers would depend upon circumstances not before us.

The Madera County Clerk argues the transfer of some of her personnel has caused hardship because the board of supervisors has not yet provided substitute personnel to do the office work formerly performed by her courtroom clerks when not in the courtroom. We presume appropriate personnel adjustments will be made in due time.

*St. John* notes how over the years the clerks assumed duties which resulted in enlarging the county clerk's staff: "As we have seen, all of the duties pertaining to the office of superior court clerk, whether essential to the office or specifically prescribed by statute, are ministerial functions necessarily subject to the control of the judges of the court so far as essential to the proper administration of justice. (See *Houston* v. *Williams, supra,* 13 Cal. 24, 27-28.) As the size of the courts and volume of court business has increased, the ability of the judges personally to control the administration of the court machinery has diminished. As the expanding courts required administrative assistance, it was natural for these functions to be assumed by the county clerks along with the related functions already being performed by them as county officers. Thus, the elected county clerks, frequently untrained in matters of court administration, have been permitted to assume many administrative duties in connection with judicial proceedings, including but not limited to the control of their deputy clerks whose principal activities are to serve the courts (including the deputy clerks actually serving as courtroom clerks), the training and assignment of deputy court clerks to the various courtrooms, the establishment of procedures to

be followed by deputies in the performance of their court related duties, the control of court calendars, the circulation of court files even when required by the courts, and the staging of court related ceremonial proceedings.

"The right to control its records and proceedings necessarily rests with the courts. To the extent the county clerk has performed these functions he has done so by the sufferance of the superior court judges in his capacity as the county clerk and not by virtue of his position as superior court clerk.

"The compelling need for the superior courts to recover control of the administration of the courts, as demonstrated by the conflict between petitioner and respondent herein, sufficiently justifies the legislative choice of language to effectuate the legislative purpose. . . ." (*St. John* v. *Superior Court, supra,* 87 Cal.App.3d at p. 41.)

We have quoted this part of *St. John* as it aptly discusses the problems which we conclude the Legislature addressed by enacting section 69898. Also, we find the thoughts consistent with our view that under inherent powers principles the action of the Madera County Superior Court may be upheld in face of constitutional challenge. Finally, having relied on *St. John,* the petitioner and other interested county clerks should note the *St. John* list of functions which they have performed by "sufferance" and cannot claim of right. Thoughtful use of section 69898 is one appropriate way for the court to recover control over its administration.

CONCLUSION

Rule 3 has the effect of shifting to the court only a part of the county clerk's duties. This is so even if we consider only the court-related duties and disregard the county clerk's duties performed on behalf of those other than the court. Because the county clerk's office is a combined one which includes her efforts on behalf of the general public and county departments, as well as the court, the office is even less diminished and clearly not destroyed by implementation of the rule.

"A presumption of constitutionality protects every legislative act." (*People* v. *Globe Grain & Mill. Co.* (1930) 211 Cal. 121, 127 [294 P. 3].) We presume the superior courts of the state will exercise their powers in conformity with the statute and Constitution. We must expect them to use the broad range of the statutory authorization with due regard for the continued vitality of the county clerks' offices (*id.* at p. 128), and without resort to the "meat ax" approach our high court warned against in *Pacific Legal Foundation* v. *Brown, supra,* 29 Cal.3d 168, 199.

We therefore hold Rule 3 is constitutionally and statutorily permitted. The petition is denied. Each side to bear its own costs.

Brown (G. A.), P. J., and Franson, J., concurred.