[No. H013730. Sixth Dist. Oct. 4, 1996.]

THE PEOPLE ex rel. DEPUTY SHERIFFS' ASSOCIATION OF SANTA CLARA COUNTY, INC., et al., Plaintiffs and Appellants, v. COUNTY OF SANTA CLARA et al., Defendants and Respondents.

## COUNSEL

Daniel E. Lungren, Attorney General, Clayton P. Roche, Deputy Attorney General, Carroll, Burdick & McDonough, Christopher D. Burdick, Alison Berry-Wilkinson and Martin R. Gran for Plaintiffs and Appellants.

Steven Woodside, County Counsel, Remcho, Johansen & Purcell, Robin B. Johansen, Philip C. Monrad, Ruby & Schofield, Allen Ruby and Glen W. Schofield for Defendants and Respondents.

## OPINION

**PREMO, J.**—Plaintiffs appeal the trial court's ruling that defendant County of Santa Clara (hereafter, County) could consolidate the offices of chief probation officer and director of the County's department of corrections.[1] Their main contention is that the offices are inherently incompatible and cannot be legally merged.

---

[1]Plaintiffs are the People of the State of California upon the relation of Deputy Sheriffs' Association of Santa Clara County, Inc., and Armand Tiano, former president of the deputy sheriffs' association, county employee, resident, and taxpayer. Defendants are the County; the Santa Clara County Department of Corrections; Quaslim Inham, director of the department of corrections; the Santa Clara County Department of Probation; Dennis P. Handis, chief probation officer; and the Board of Supervisors of the County of Santa Clara. On September

## FACTS

In 1987, in Santa Clara County Charter section 509, ratified by the voters on June 6, 1988, the County established a department of corrections (hereafter, Corrections) to run the County's jails pursuant to Government Code section 23013. The board of supervisors (hereafter, board) transferred jurisdiction over the jails from the sheriff to a director of corrections (hereafter, director) who staffed the jails with "correctional officers" and "correctional deputies." The former were hired and trained by the director; the latter originally had been hired and deputized by the sheriff. After the changeover, in addition to being members of Corrections, the correctional deputies remained members of the sheriff's department with the contractual right to transfer into the sheriff's department as openings arose. By June 1990, a substantial number had taken advantage of this right, and the number of correctional deputies in Corrections fell below that required by state law. (*County of Santa Clara* v. *Deputy Sheriffs' Assn.* (1992) 3 Cal.4th 873, 877-878 [13 Cal.Rptr.2d 53, 838 P.2d 781].)

This created a problem because correctional officers are classified in the Penal Code as custodial officers, not peace officers, and they may not carry firearms in the course of their duties. (Pen. Code, §§ 831, 831.5.) Correctional deputies, on the other hand, are classified as peace officers and may carry firearms in the course of their duties. (Pen. Code, §§ 830.1, 830.6, subd. (a)(2).) Armed officers are needed at the jail for transporting prisoners, pursuing escaped prisoners, and supervising custodial officers.

In 1990, County tried to confer "limited peace officer" status upon the correctional officers. The deputy sheriffs' association (hereafter, DSA) objected, and County sued it for a declaration of rights and duties. This court upheld the decision of the trial court allowing the conferring of such status,[2] but the Supreme Court reversed. It held that county correctional officers are not peace officers listed in Penal Code section 830 and may not carry firearms in the course of their duties. (*County of Santa Clara* v. *Deputy Sheriffs' Assn., supra,* 3 Cal.4th 873.)

---

20, 1994, Daniel Vasquez, who replaced Inham as director of the department of corrections, was substituted as a defendant.

[2]*County of Santa Clara* v. *Deputy Sheriffs' Assn.* (Sept. 3, 1991) H007648 (nonpub. opn.).

In July 1993, after an unsuccessful attempt to amend the Penal Code to permit correctional officers to carry firearms,[3] the board adopted a resolution consolidating corrections as a "bureau" "under the jurisdiction of the Probation Department[]" to whom it entrusted "jurisdiction of all county functions, personnel and facilities relating to institutional confinement, punishment, care, treatment and rehabilitation of offenders, both presentenced and sentenced, juvenile and adult." Probation officers have limited peace officer status and may carry firearms in the performance of their duties. (Pen. Code, § 830.5.)

On July 20, 1993, plaintiffs filed a complaint challenging the consolidation of the two departments as well as the chief probation officer's attempted grant of peace officer powers to correctional officers. The trial court dismissed the matter because a challenge to the consolidation of county offices should be raised in a quo warranto proceeding[4] for which the permission of the Attorney General is necessary. (Code Civ. Proc., § 803.)

On January 13, 1994, the Attorney General granted leave to sue and on February 7, 1994, plaintiffs filed a verified complaint in quo warranto for injunctive and declaratory relief. After all the superior court judges of the county recused themselves, the Judicial Council assigned the Honorable Winslow Christian (retired) to hear and decide the issue. The Santa Clara County Correctional Peace Officers' Association agreed to participate as amicus curiae and a one-day court trial was held on September 21, 1994. Thereafter, Justice Christian held that the board's consolidation of offices was lawful and effective. This appeal ensued.

### CONTENTIONS ON APPEAL

Appellants assert that the offices of director of corrections and chief probation officer are incompatible and cannot be consolidated. First, they claim that one individual cannot hold and perform the duties of both offices without violating the California common law prohibition on the holding of

---

[3]Senator Alfred Alquist introduced Senate Bill No. 594, which would have amended the Penal Code to permit county correctional officers to carry firearms in the course of their duties. The bill passed out of the Senate Judiciary Committee but by May 3, 1994, it was "stalled in the Senate, has not been set for further hearing, and is considered 'dead' by the Board and the County."

[4]The single remaining cause of action in the original complaint (No. 733145) questioned the authority of the chief probation officer to grant peace officer power pursuant to Penal Code section 830.5 to correctional officers. That complaint was consolidated with the quo warranto action for case management purposes only. Proceedings on that issue were stayed pending trial on the quo warranto action. The matter has not been litigated and that issue is not before this court.

two incompatible public offices. They contend consolidation creates conflicts of interest both actually and potentially and that the consolidated officer's loyalties are inherently inconsistent and conflicting.

Furthermore, the chief probation officer cannot carry out the duties of the director of corrections because there is no legislative authority for a probation department to run institutions for untried, unsentenced adults. Next, by appointing the chief probation officer (who is appointed by the superior court) ex officio chief officer of the bureau of corrections, the board improperly delegated to the court the board's responsibility to appoint the director of corrections. This violated the enabling provisions which established the original department of corrections.

Finally, appellants dismiss as irrelevant County's claim that the merger is efficacious, economical, and progressive, remarking: "[t]he Legislature has not blessed this marriage of convenience."

### STANDARD OF REVIEW

"Where the facts are not in conflict and the issue involves the proper application of a statute or administrative regulation, a reviewing court is not bound by the trial court's determination. [Citations.]" (*Shoban* v. *Board of Trustees* (1969) 276 Cal.App.2d 534, 541 [81 Cal.Rptr. 112].) In our case, the evidence bearing on the interpretation of the statutes and ordinances brought into issue in this case is not in substantial conflict. Consequently, we are "not bound by the trial court's finding, but must make our own determination respecting the proper interpretation of the [enactments]. [Citations.]" (*Ibid.*)

### INCOMPATIBILITY

#### 1. *Subordination*

As a charter county, County has the constitutional authority to consolidate offices and its authority is not limited by general law as found in Government Code section 24300. (Cal. Const., art. XI, § 4; *More* v. *Board of Supervisors* (1916) 31 Cal.App. 388, 393 [160 P. 702]; 77 Ops.Cal.Atty.Gen. 7 (1994); see also Gov. Code, § 24308.)

County exercised this power by resolution stating in pertinent part: "1. *Consolidation of Corrections Department under Probation.* The county department of corrections . . . is hereby consolidated under the jurisdiction of the Probation Department. The Probation Department shall have jurisdiction of all county functions, personnel and facilities relating to institutional

confinement, punishment, care, treatment and rehabilitation of offenders, both presentenced and sentenced, juvenile and adult.

"2. *Name.* The department of corrections . . . is hereby renamed as the Bureau of Correction, hereafter referred to as the Bureau.

"3. *Head of Correction.* There is in the County the position of Chief Officer of the Bureau of Correction, hereafter referred to as Chief Officer, appointed by the Board of Supervisors. The Board of Supervisors hereby appoints the Chief Probation Officer to serve as Chief Officer.

"4. *Duties of Chief Officer.*

"(a) The Chief Officer shall be in charge of and responsible for the correctional facilities under the jurisdiction of the Bureau and shall have custody of the presentenced and sentenced prisoners in them in accordance with such rules and regulations as prescribed by state law and by the Board of Supervisors.

"(b) The Chief Officer shall perform those duties with respect to the keeping of prisoners and the administration of the County jail which are assigned to the Sheriff by general law.

"(c) The Chief Officer shall have administrative control over the Bureau . . . ."

By appointing the chief probation officer to be chief officer of the bureau of correction, the chief probation officer became ex officio head of corrections. ■ Ex officio powers come "[f]rom office; by virtue of the office; without any other warrant or appointment than that resulting from the holding of a particular office. Powers may be exercised by an officer which are not specifically conferred upon him, but are necessarily implied in his office; these are *ex officio.* . . ." (Black's Law Dict. (6th ed. 1990) p. 575 [ex officio].)

"From California's earliest days, courts have interpreted 'ex officio' in the context of the occasion. If the enabling act or Constitution called for two elective offices, or otherwise made it clear that no melding of offices was intended, the solution was to find the offices to be distinct. In those cases, the courts held the duties were assigned to the office holder of the designated office in question. For example, in *People* v. *Durick* (1862) 20 Cal. 94, the two elective offices of county clerk and county recorder were found to be distinct even though they could be held by the same person.

"On other occasions our high court has interpreted 'ex officio' to mean two offices blended into one. In *City of Oakland* v. *Snow* (1904) 145 Cal. 419 [78 P. 1060], Oakland's charter provided for the election of an ' "auditor who shall be *ex officio* assessor." ' [Citation.] The court held 'by requiring the duties of such functionaries to be discharged by the same person, it has created a single office . . .' and only one bond was required. [Citation.] It distinguished *People* v. *Edwards* (1858) 9 Cal. 286, in which offices were held to be distinct because the Constitution required a tax collector and a sheriff to be elected in each county. In the *Edwards* situation, the two offices could be held by one person but would remain separate even though the duties of one were assigned to the other. Neither office could be abolished by legislation." (*Price* v. *Superior Court* (1986) 186 Cal.App.3d 156, 162 [230 Cal.Rptr. 442].)

▇▇ The language of the resolution makes it clear that the board intended to merge the offices into one. It "subordinated" correction "under" probation and denominated correction a "bureau" of probation. "In the classification of ministerial officers of the government, it may be mentioned that a department is one of the separate divisions or branches of state or municipal administration, while a 'bureau' is understood to be a division of a department." (3 McQuillin, Municipal Corporations (3d ed. rev. 1990) § 12.39 p. 238.)[5] Thus, County did not simply make one individual head of two County departments: it subordinated one department to the other.[6]

Such subordination, however, is beyond County's powers. These offices are not entities of the County's creation. The office of chief probation officer is established in Welfare and Institutions Code section 270. The office of director of corrections is carved out of that of the sheriff. (Gov. Code, § 23013.) The office of sheriff is authorized by article XI, section 1, subdivision (b), of the California Constitution, which requires the Legislature to

[5]An "[o]fficial's duty is 'ministerial' when it is absolute, certain and imperative, involving merely execution of a specific duty arising from fixed and designated facts. [Citation.]" (Black's Law Dict., *supra*, p. 996 [ministerial act].)

[6]This court asked for supplemental briefing on the issue of subordination. County cited Government Code section 24308, subdivision (a), which allows a county to "organize, pursuant to ordinance or charter, the delivery of any services for which county government is responsible under state law, into departments or agencies that provide multiple services, except those duties and responsibilities of other elected county officials mandated by the California Constitution or by statute. . . ." County claims that the 1994 amendment to this section included findings that "virtually eliminate the common law of incompatible offices at the county level." However, County then laments, "were it not for the language in section 302 of the County Charter requiring offices be consistent, under Government Code section 24308 the Board of Supervisors' authority to consolidate offices would be restricted only by the Constitution and state statute." Santa Clara County Charter section 302 is there, however, so the consistency of offices remains an issue.

provide for "an elected county sheriff," and subdivision (c) of section 4 of article XI, which places a similar requirement on county charters. The power to consolidate county offices is not the power to create or enlarge a public office "because such office has already been created by the Legislature." (*Brooks* v. *Stewart* (1950) 97 Cal.App.2d 385, 388 [218 P.2d 56].)

In transferring the duties of the director of corrections to the chief probation officer by subordinating the director and Corrections to probation, County enlarged the office of chief probation officer. However, although the probation officer is a county officer (*Superior Court* v. *Civil Service Commission* (1968) 257 Cal.App.2d 632, 634 [65 Cal.Rptr. 93]), he or she is selected by and serves at the will of the judiciary (Welf. & Inst. Code, § 270) and the county does not have the power to "fix the term of office nor to prescribe the duties thereof. It only permits such board to *consolidate* the *duties* of such offices already created . . . ." (*Brooks* v. *Stewart, supra,* 97 Cal.App.2d at p. 388.) Adult and juvenile probation officers are authorized and their duties are defined by the Legislature.[7] The sheriff's duties vis-à-vis the jail and the prisoners in it, similarly, are set forth in numerous statutes.[8]

---

[7]Adult and juvenile probation officers are authorized in Penal Code section 1203.5 and Welfare and Institutions Code section 270, respectively, and their duties are defined in Welfare and Institutions Code section 280. A charter county may provide a method of appointment and tenure of office for probation officers and department personnel. (Welf. & Inst. Code, § 271.) County took advantage of this in enacting Santa Clara County Code section A27-12, which establishes the office of probation officer and provides that he or she shall serve as both the juvenile probation officer and the adult probation officer.

[8]The sheriff shall take charge of and keep the county jail and the prisoners in it. (Gov. Code, § 26605; Pen. Code, § 4000 et seq.) He or she shall also bring inmates before a magistrate after their arrest and as ordered by the court (Pen. Code, §§ 145, 849); approve and accept bail fixed by bail schedule or arrest warrant (Pen. Code, § 1269b); receive and store prisoners' personal property upon their arrest and return it on release (Pen. Code, § 4003; Gov. Code, § 26640); treat prisoners humanely and without oppression (Pen. Code, §§ 147, 149); feed, clothe, and house the inmates, maintain their health, and preserve their peace (§ 4011 et seq.); remove a prisoner under guard to a hospital, commit a person who may be mentally disordered to a facility for 72-hour treatment and evaluation, or remove or release an inmate for family emergencies or preparatory for return to the community (Pen. Code, §§ 4011.5, 4011.6, 4018.6); deliver papers served on a prisoner (Pen. Code, § 4013); provide rehabilitative services (Pen. Code, §§ 4011.8, 4018.5); supervise their work (Pen. Code, §§ 4017-4018); confine or transport them to serve their sentences (Pen. Code, §§ 1216, 4000, subd. 4); operate a work furlough program (Pen. Code, § 1208); and operate work release programs (Pen. Code, §§ 4024.2, 4024.3).

The sheriff must staff the jail with properly qualified and trained personnel (Cal. Code Regs., tit. 15, § 100 et seq.) and comply with title 15's standards for local jail facilities and personnel set by the Board of Corrections (Pen. Code, §§ 6024-6031).

There is no single statutory provision which sets forth subcategories of employees whom the sheriff can utilize for jail functions. However, from various statutes we glean the

■ Offices are incompatible " 'where one is subordinate to the other and subject in some degree to the supervisory power of its incumbent . . . .' " (*People* ex rel. *Chapman* v. *Rapsey* (1940) 16 Cal.2d 636, 642 [107 P.2d 388], citation omitted.)

"Section 469 of Volume 2 of McQuillin on Municipal Corporations says: [¶] . . . 'Incompatibility arises . . . from the nature of the duties of the offices, when there is an inconsistency in the functions of the two, where the functions of the two are inherently inconsistent or repugnant, as where antagonism would result in the attempt by one person to discharge the duties of both offices, or where the nature and duties of the two offices are such as to render it improper from considerations of public policy for one person to retain both.' " (*People* ex rel. *Chapman* v. *Rapsey, supra,* 16 Cal.2d at pp. 641-642.)

" 'The inconsistency, which at common law makes offices incompatible, does not consist in the physical impossibility to discharge the duties of both offices, but lies rather in a conflict of interest, as where one is subordinate to the other and subject in some degree to the supervisory power of its incumbent, or where the incumbent of one of the offices has the power to remove the incumbent of the other or to audit the accounts of the other.' " (*People* ex rel. *Chapman* v. *Rapsey, supra,* 16 Cal.2d at p. 642, quoting 46 C.J. 941.)

" 'It is not an essential element of incompatibility at common law that the clash of duty should exist in all or in the greater part of the official functions. If one office is superior to the other in some of its principal or important duties, so that the exercise of such duties might conflict, to the public detriment, with the exercise of other important duties in the subordinate office, then the offices are incompatible.' " (*People* ex rel. *Chapman* v. *Rapsey, supra,* 16 Cal.2d at p. 642, quoting *State* v. *Jones* (1907) 130 Wis. 572 [110 N.W. 431].)

### 2. *Conflicts of Interest*

■ Appellants assert that the offices of chief probation officer and chief officer of corrections are incompatible because of both actual and

---

possibility of undersheriffs and deputies (Pen. Code, § 830.1; Gov. Code, § 31470.2); reserve or auxiliary sheriffs (Pen. Code, § 830.6); station officers (unarmed civilian employees who assist peace officers at the jail) and jailers (Pen. Code, § 4021); turnkeys (Gov. Code, § 31470.2); keepers and guards (Pen. Code, § 4020.8); bailiffs employed by the sheriff (Gov. Code, § 20440); and county peace officers ("employees of the sheriff employed in a county jail, detention or correctional facility and having as their primary duty the responsibility the supervision and custody of persons committed to the jail or facility, whether or not these employees are deputized. . . .") (Gov. Code, § 20439.)

potential conflicts of interest. Appellants cite as an actual conflict of interest the inability of County to comply with Penal Code section 3075 (hereafter simply, section 3075) which establishes a three-person county board of parole commissioners.

The board is to "consist[] of each of the following: [¶] (1) The sheriff or, in a county with a department of corrections, the director of that department. [¶] (2) The probation officer. [¶] (3) A member, not a public official, to be selected from the public by the presiding judge . . . ." (§ 3075.)

The board is to act "at regularly called meetings at which two-thirds of the members are present . . . ." (Pen. Code, § 3076, subd. (b).) Its purpose is to further the public safety by assisting in the transition between imprisonment and discharge of prisoners by providing them with supervision and counseling. (Pen. Code, § 3074.) The board makes rules and regulations for parole of inmates sentenced to confinement in county detention facilities (Pen. Code, § 3076), votes to grant or deny parole "at a meeting at which a quorum of its members are present" (Pen. Code, § 3079), and retakes and imprisons prisoners in violation of the rules and regulations governing their parole (Pen. Code, § 3081).

Appellants state that "[t]he composition of the board (three members), as mandated by the [L]egislature, creates checks and balances, giving the board perspectives from: (1) the agency which detained the parolee; (2) the agency responsible for assisting the parolee's return to society; and (3) the public, the ultimate beneficiary (or victim) of the board's decision to parole. The [corrections] director may wish to reduce overcrowding, or simply make room for new offenders, and may not share probation's viewpoint on parole eligibility or the efforts needed to assist a parolee's return to society. This consolidation vitiates the checks and balances inherent in the three-member parole board."

Appellants also assert that the consolidation "illegally reduc[ed] the County Board of Parole Commissioners to a *de facto* two-member body, with two board seats held, appointed, and controlled by one individual." In an effort to avoid the incompatibility of one individual's holding seats designated for two county officers, the chief probation officer/director of corrections did "not attend[] personally but, instead, appoint[ed] two deputies, one from Probation and one from Corrections, to sit in his place." However, appellants continue, "as stated in *Sarter* v. *Siskiyou County* [(1919)] 42 Cal.App. 530, 536 [183 P. 852]: '[A] deputy under a public officer and the officer or person holding the office, are, in contemplation of law and in an official sense, one and the same person.'"

 Furthermore, since the parole board receives its staff service from the probation department, appellants declare, "not only does Probation hold two seats on the board, it also gathers, screens, and decides what information to provide to the Commission. This gives Probation a legislatively uncontemplated amount of control over the release of inmates on parole."

Finally, "by virtue of this consolidation, the Board is now fully controlled by the judiciary. The judges appoint not only the Chief Probation Officer (who, in turn, appoints the probation representative, the corrections representative, and the staff to advise the Commission), but also the citizen member of the Commission. The Legislature, in enacting this statutory scheme, surely did not contemplate that the entire Commission would be under the control of the judiciary. A separation of powers violation is facially apparent."

Section 3075 declares that county parole boards are composed of "each of" three members: two ex officio members, that is, members who are on the board because of the public offices they hold, and one member who is not a public office holder who is appointed by the court. Of the public officers, the sheriff[9] is the officer responsible to the board of supervisors and the courts for the confinement of persons under sentence of local imprisonment, and the chief probation officer is the officer responsible to the courts for the supervision of sentenced criminals released into the community. The public member represents the community. We conclude the Legislature clearly envisioned a " 'representative' Board benefited by the perspectives, opinions and values of its varied membership and thus their vote representative of such diverse interests." (*Grimm* v. *City of San Diego* (1979) 94 Cal.App.3d 33, 40 [156 Cal.Rptr. 240].)

The county parole board is itself a public office. (*Webster* v. *Board of Education* (1903) 140 Cal. 331, 332 [73 P. 1070].) "A public office requires the presence of two essential elements: (1) an office which is not transient, occasional or incidental but is in itself an entity in which incumbents succeed one another; and (2) the delegation to the office of some portion of the sovereign functions of government, either legislative, executive or judicial. [Citations.]" (*Moore* v. *Panish* (1982) 32 Cal.3d 535, 545 [186 Cal.Rptr. 475, 652 P.2d 32].) The duties of the parole board are legislative in that they establish rules and regulations for the grant, denial, or revocation of parole; and they are quasi-judicial in that the board grants or denies applications for parole and parole revocation.

"[T]he general rule is, that such duties cannot be delegated; and we have been referred to no law in which there is an attempt to delegate them. The

---

[9]Hereafter, "sheriff" shall mean "sheriff or director of correction" unless otherwise stated.

[chief probation officer] has power to appoint deputies to assist in discharging his duties as such officer; but a member of the board [of parole commissioners], which is a different office, is nowhere given authority to act by deputy, and the exercise of such authority would be entirely inconsistent with the nature of that office, and an anomaly in the law. A legislative intent that one member of the board could act by deputy while no other member could would have to be very clearly expressed to entitle it to any consideration." (*Webster* v. *Board of Education, supra,* 140 Cal. at p. 332.) See, for example, Penal Code sections 3085 and 3083, which authorize members of the board to designate deputies to serve as temporary commissioners when the members are unable to serve "for the purpose of considering applications for parole of prisoners . . . ." (Pen. Code, § 3085.) These sections do not allow members of the board to designate deputies to serve in their stead for all purposes.

Finally, Penal Code sections 3076 and 3079 require a quorum of two of the three board members to act. Under the consolidation, the chief probation officer/chief officer of the bureau of correction holds two seats on the board. However, " 'The requirement of a quorum is a protection against totally unrepresentative action in the name of the body by an unduly small number of persons.' (Robert's Rules of Order (rev. ed. 1970) p. 16.) [Sections 3075 et seq.] mandate[] not only the creation of the Board, but more importantly, its composition [citation]. The evident purpose of this latter provision is to secure a board as objective, fair and competent as possible through the representation of all those interests necessarily involved within a [parole] system." (*Grimm* v. *City of San Diego, supra,* 94 Cal.App.3d at p. 39.)

 We do not believe the legislative intent in establishing a board to consider parole is furthered by one individual's serving in a dual role. As the Lord Chancellor stated, "I am here in two capacities, and they clash, my Lords, they clash! I deeply grieve to say that in declining to entertain my last application to myself, I presumed to address myself in terms which render it impossible for me ever to apply to myself again. It was a most painful scene, my Lords—most painful." (GILBERT & SULLIVAN, IOLANTHE (London Records, Inc. 1976) act 2, p. 14.) By allowing one individual to constitute a quorum by holding two seats on the board, the consolidation makes possible " 'totally unrepresentative action in the name of the body by an unduly small number of persons.' [Citation.]" (*Grimm* v. *City of San Diego, supra,* 94 Cal.App.3d at p. 39.)

Next, as an example of a potential conflict of interest, appellants point to jail overcrowding which occurred in the late 1980's and which could recur

with the jail population increasing in part due to "three-strikes-and-you're-out." At that time, the county jails were operated under two consent decrees, the *Branson* decree involving the male jail population on issues of over-crowding and human rights, and the *Fischer* decree involving equal treat-ment for female prisoners. (Branson v. Santa Clara County County (Super. Ct. Santa Clara County, 1982, No. 78807); Fischer v. Geary (U.S. Dist. Ct. (N.D. Cal.), 1982, No. C762208RFP(SJ)).)

Sheriff's Captain Robert Wilson testified that from 1987 through 1989, when he was the assistant sheriff in charge of adult correctional facilities (except the work furlough program administered by the probation depart-ment), he found himself in constant conflict with the courts because he had to release "hundreds of inmates . . . for no other reason than we didn't have a bed to put them in." The standards used by the sheriff to determine an inmate's eligibility for release were far more lenient than the standards of the county board of parole, and the citations release policy was constantly being challenged by the courts. "We had a policy that if you had a warrant of five hundred dollars or less and you met certain criteria we would release you in the field rather than book you. And that same policy was used in the courts. . . .

". . . [W]e would set the citations release amount at a thousand dollars, and we would immediately see the judges . . . start setting bail on releases at twelve hundred.

". . . I recall when we set it at twenty-five hundred dollars, we started getting bail amounts of twenty-five hundred and one. . . .

"And I understand the judges' concerns about keeping people in custody, but we were—I was between a rock and a hard place." Wilson was called into the chambers of the presiding judge who was upset over the number of release orders he was asked to approve, "and he said he was very concerned about the release, didn't want it to happen. And I said, well, I don't really have a choice. [¶] And he says, well, I don't want them released. [¶] And I said, well, are you saying that you're now going to take over the Branson case? [¶] He said no. [¶] I said, well, then I'm going to release them. If you want to hold me in contempt, please do so, we'll go to court. But I have no choice."

Appellants suggest that if such a situation occurred with the offices consolidated, in his function as chief officer of Corrections, the consolidated officer might select for release (Pen. Code, § 4024.1 [accelerated release; inmate count exceeding bed capacity]) those very individuals for whom, as

chief probation officer, he recommended denial of release or bail reduction. Similarly, as chief officer, he might be forced to accept additional inmates committed by the courts on his own recommendation as chief probation officer, even if it brought him as chief officer out of compliance with jail population standards or another court's consent decree as occurred previously. Finally, there is potential for an additional conflict if the chief officer is unable to comply with instructions affecting the jail issued by the board.

As appellants state, "the Presiding Judge may find that following the directions of the Board could constitute 'good cause' for the [chief probation officer]'s dismissal. Under such circumstances, the single person holding both offices is . . . unable to discharge his/her duties and responsibilities. Such a division of loyalty is repugnant to the public interest and would result in unfortunate antagonism between the Board and the courts."

Frustrating as the jail situation undoubtedly was, it did not involve a conflict of interest between two offices. The sheriff was not in the position of clashing with himself in another capacity. He was simply the unfortunate recipient of competing orders from the federal and state courts. A recurrence of that situation after consolidation would still not involve any other office but that of keeper of the jails. In that capacity, the director of corrections would not be pitted against himself as chief probation officer because in neither capacity would he be in the position of denying a request from himself or giving or countermanding a decision made in his other capacity. The reality would remain the same: the officer keeping the jails would be under the duty to obey the orders of the two courts as best he could. Any conflict those orders might create would be a conflict in the performance of the duties of the single office, would arise from outside the office, and would not be inherent in it. This does not constitute incompatibility of offices.

To sum up, appellants are correct that an actual conflict of interest resulting from the consolidated officer's holding two positions on the County board of parole commissioners renders the offices incompatible; however, there is no potential conflict of interest and, therefore, no incompatibility arising from the operation of overcrowded jails as discussed above.

MAY PROBATION OPERATE INSTITUTIONS FOR UNCONVICTED ADULTS?

Next, appellants charge: "There is no California statute which authorizes a probation department to operate county jails or to exercise custodial functions over unsentenced or untried adults."

The County responds that "the Legislature has expressly recognized that probation officers may run custodial institutions such as county jails and has

strengthened their authority to do so." The authority given for this statement is "Penal Code section 830.5 [which] recognizes as peace officers 'any superintendent, supervisor, or employee having custodial responsibilities in an institution operated by a probation department, or any transportation officer of a probation department.' (Pen. Code, § 830.5(b).)"

In order to determine whether a probation department may run an institution for unsentenced, untried adults, we look to the legislative enactments that prescribe the powers and duties of probation officers and to the legislative enactments establishing county jails and detention facilities. (*People* v. *Garrett* (1925) 72 Cal.App. 452, 457 [237 P. 829].)

The duties of adult probation officers are set out in the Penal Code for the most part, and those of juvenile probation officers are placed in the Welfare and Institutions Code. In addition, Santa Clara County Code section A27-15 provides that "[t]he duties of the chief probation officer[10] shall be those provided by general law and county ordinance and/or resolution." Adult probation officers are to perform all the duties of probation officers except for matters under the jurisdiction of the juvenile court. (Pen. Code, § 1203.5.)

Juvenile probation officers have extensive powers over and duties toward minors[11] which include the operation of detention facilities for minors.

[10]Section A27-15 of the Santa Clara County Code refers to the probation officer as the "chief probation officer" whereas sections A27-12, A27-13, A27-14, and A27-16 use the terminology "probation officer."

[11]Juvenile probation officers themselves may take into custody or receive from peace officers juveniles whose mistreatment or lack of care make them dependent children as described in Welfare and Institutions Code section 300 (Welf. & Inst. Code, §§ 305, 307), or who are out of control (Welf. & Inst. Code, § 601), who have violated a law defining a crime (Welf. & Inst. Code, § 602), or who have been committed to juvenile hall by order or process issued under the authority of the United States (Welf. & Inst. Code, § 862).

Juvenile probation officers may receive juvenile offenders from an arresting peace officer (Welf. & Inst. Code, §§ 626, subd. (a), 626.5), release or detain them (Welf. & Inst. Code, § 628) in the juvenile hall which the probation department controls (Welf. & Inst. Code, § 852) or in a nonsecure detention facility (Welf. & Inst. Code, §§ 207, 628). "The juvenile hall shall not be in or connected with, any jail or prison, and shall not be deemed to be nor be treated as a penal institution. It shall be conducted in all respects as nearly like a home as possible." (Welf. & Inst. Code, § 851.)

Juvenile probation officers must investigate allegations which if true would support an adjudication of the minor as a dependent or ward of the court and determine whether release is appropriate (Welf. & Inst. Code, §§ 309, 301, 628, 629), whether supervision in lieu of filing a petition is appropriate (Welf. & Inst. Code, § 654), or whether proceedings should be commenced (Welf. & Inst. Code, §§ 652, 653) by referral to the prosecutor (Welf. & Inst. Code, § 653.1) or by the filing of a petition in the juvenile court (Welf. & Inst. Code, §§ 311,

(Welf. & Inst. Code, §§ 851-852.) The County code establishes three juvenile facilities in the County for children from nine through seventeen years of age. (Santa Clara County Code, §§ A27-18, A27-19.)

In contrast, adult probation officers' authority is limited to adults who have been convicted of a crime. The adult probation officer investigates and reports to the court on adults who have been convicted by trial or plea, recommends sentences, and keeps records on the supervision of persons committed to his or her care. (Pen. Code, § 1203.10; Welf. & Inst. Code, §§ 281-285.) If authorized by the board of supervisors, the probation officer may offer sentenced adults a home detention program during service of sentence in lieu of confinement in the jail or other county correctional facility. (Pen. Code, § 1203.016.)

Adult probation officers supervise probationers (Pen. Code, § 1203, subd. (a)); operate work furlough programs (Pen. Code, § 1208); engage in activities to prevent adult delinquency (Pen. Code, § 1203.14); establish and participate in crime prevention programs (Pen. Code, § 1203.13); determine the amount and manner of restitution (Pen. Code, § 1203.1k); collect fines and restitution payments (Pen. Code, § 1203.1); rearrest probationers on violations of conditions of probation and petition and report to the court regarding the modification, revocation, or termination of probation (Pen. Code, §§ 1203.2, 1203.12); and temporarily release inmates in preparation for their return to the community (Pen. Code, § 1203.1a).

---

325, 650). If a petition is filed based upon alleged neglect or abuse of the minor, the probation officer shall be the guardian ad litem to represent the interests of the minor unless the court appoints another adult. (Welf. & Inst. Code, § 326.) If court proceedings are instituted, the juvenile probation officer is to be present in and assist the court at every hearing and is to prepare a social study and recommendation for disposition of the case (Welf. & Inst. Code, §§ 280, 707).

Juvenile probation officers also must investigate cases of mistreated minors who have been taken into temporary custody under Welfare and Institutions Code section 300 (Welf. & Inst. Code, § 309), and prepare for every hearing on the disposition of a dependency case or wardship proceeding (Welf. & Inst. Code, § 280). Juvenile probation officers may employ psychiatrists, psychologists, and other clinical experts. (Welf. & Inst. Code, § 273.)

A minor who is adjudged a ward of the court is placed under the custody, care, and control of the juvenile probation officer who may place the minor in a home-type setting (Welf. & Inst. Code, § 727), or in a juvenile home, ranch, camp, or forestry camp, if additional treatment is ordered by the court (Welf. & Inst. Code, § 730). In addition to nonsecure detention facilities and the juvenile hall, the juvenile probation officer operates juvenile homes, ranches, camps, and forestry camps. (Welf. & Inst. Code, §§ 880-882.)

The juvenile probation officer supervises work by inmates (Welf. & Inst. Code, §§ 883, 884), may receive, deposit, and disburse funds (Welf. & Inst. Code, § 276), sell wards' handiwork and dispose of the proceeds (Welf. & Inst. Code, § 277), arrange for payment of restitution through performance of a service contract (Welf. & Inst. Code, § 729.7) and supervise community service (Welf. & Inst. Code, § 729.8).

A court ordering detention or confinement of an adult does not order the person confined in a particular facility, but commits the person to the custody of the officer named by the Legislature to receive and keep that category of persons. For example, pretrial detainees and material witnesses are committed to the custody of the sheriff. (Pen. Code, §§ 863, 873, 875, 877, 877a, 881.) When an adult is granted probation, the court places him or her in the care, custody, and control of the adult probation officer. (Pen. Code, § 1215.)

None of the statutes cited give adult probation officers authority to receive and detain adults accused of a crime, convicted adults not placed on probation, persons civilly committed, and persons committed to custody by order or process issued under the authority of the United States. These and other jail functions are confided to the sheriff (Gov. Code, § 26605) or Corrections (Gov. Code, § 23013) and are delineated in the Government and Penal Codes.

Although Penal Code section 830.5 states that probation officers and deputy probation officers are peace officers who may carry firearms if authorized and if they have "custodial responsibilities in an institution operated by a probation department, or [they are] transportation officer[s] of a probation department" (Pen. Code, § 830.5, subd. (b)), their authority extends only: "(1) To conditions . . . of probation by any person in this state on . . . probation.

"(2) To the escape of any inmate or ward from a state or local institution.

"(3) To the transportation of persons on . . . probation.

"(4) To violations of any penal provisions of law which are discovered while performing the usual or authorized duties of his or her employment.

"(5) To the rendering of mutual aid to any other law enforcement agency. . . ." (Pen. Code, § 830.5, subd. (a).) These provisions do not constitute a grant of authority to operate jails.

We disagree with respondents' assertion that there is authority for the adult probation officer to operate county jails, work release programs and industrial farms and industrial road camps for both sentenced and unsentenced prisoners in Penal Code section 4018 (employment of superintendent of an industrial farm or camp), 4019 (authorizing time credits to sentenced and unsentenced prisoners held in county facilities), or 4024.2 (authorizing "the sheriff or other official in charge of county correctional facilities" to

offer a work release program). The general law describing the powers and duties of the public officer who may receive and keep individuals against their will is addressed to the sheriff. The sections cited by respondents contain no grant of authority to the probation officer to operate those jail facilities or programs.

Pursuant to general law, the sheriff takes charge of and keeps the county jail and the prisoners in it. (Gov. Code, § 26605; Pen. Code, § 4000 et seq.) The sheriff "receive[s] all persons committed to jail by competent authority. . . ." (Pen. Code, § 4015, subd. (a).) These may be persons committed in order to secure their attendance as witnesses in criminal cases; persons charged with crime and committed for trial; persons committed for contempt, upon civil process or by other authority of law; and persons sentenced to imprisonment in the jail upon conviction for crime. (Pen. Code, § 4000.) In addition, given adequate space, the sheriff must receive and keep in the county jail any prisoner committed thereto by process or order issued under the authority of the United States. (Pen. Code, § 4005.) Many of the sheriff's duties toward adult prisoners are entrusted to the juvenile probation officer for juveniles. (See *ante*, fn. 10.)

From this compilation of the duties of the chief probation officer and the sheriff, we see that the chief probation officer's duties in no way comprehend the care and custody of untried and unsentenced adults and adults committed under civil or federal order or process. Consequently, County's subordination of corrections to probation required the chief probation officer to perform duties which in general law he is not authorized to perform. Since offices are incompatible when " 'the holder cannot in every instance discharge the duties of each' " (*People* ex rel. *Chapman* v. *Rapsey*, *supra*, 16 Cal.2d at p. 641), the consolidation is invalid.

### DELEGATION OF THE BOARD'S APPOINTMENT POWER

Finally, appellants assert that the board unlawfully delegated its power to appoint the director of corrections when it appointed the chief probation officer as chief officer of the bureau.

We disagree. ■ An appointment is ". . . [t]he selection or designation of a person, by the person or persons having authority therefor, to fill an office or public function and discharge the duties of the same. . . ." (Black's Law Dict., *supra*, p. 99.)

Government Code section 23013 and Santa Clara County Charter section 509 provide that the board shall appoint the head of Corrections. The Santa

Clara County Code at section A27-13 provides that the probation officer shall be appointed in accordance with the provisions of general law. General law provides that the chief probation officer and the adult probation officer (positions consolidated in County) are appointed by, respectively, the juvenile and adult courts. (Welf. & Inst. Code, § 270; Pen. Code, § 1203.6.) In County, the probation officer is appointed by the superior court.

The home rule provisions of the state Constitution in article XI, section 4, allow counties to establish the manner of appointment or removal of a county officer (*Curphey* v. *Superior Court* (1959) 169 Cal.App.2d 261, 265 [337 P.2d 169]) and the Legislature authorized boards of supervisors in charter counties to establish the office and appoint the director of corrections. Consequently, the board's appointment of the chief probation officer to an additional office via ex officio declaration is an appointment made by the board and not an unlawful delegation of duty to the court.

## CONCLUSION

We conclude that the board improperly consolidated probation and correction when it subordinated the latter to the former. In addition, the offices are incompatible insofar as the consolidation imposed on the chief probation officer duties which general law does not authorize him to carry out. The chief probation officer may not sit on the County board of parole commissioners in two capacities and he may not run institutions for the confinement of unsentenced adults.

## DISPOSITION

The judgment is reversed. Costs on appeal to appellants.

Cottle, P. J., and Elia, J., concurred.

A petition for a rehearing was denied October 25, 1996, and respondents' petition for review by the Supreme Court was denied January 22, 1997.