TO BE PUBLISHED IN THE OFFICIAL REPORTS

OFFICE OF THE ATTORNEY GENERAL
State of California

DANIEL E. LUNGREN
Attorney General

_____

| | | |
|---|---|---|
| OPINION | : | |
| | : | No. 98-707 |
| of | : | |
| | : | September 30, 1998 |
| DANIEL E. LUNGREN | : | |
| Attorney General | : | |
| | : | |
| ANTHONY S. Da VIGO | : | |
| Deputy Attorney General | : | |
| | : | |

_____

FRANCIS BOYKIN, JIM CONNER, and PATRICK WILLIAMS have requested this office to grant leave to sue in quo warranto upon the following:

## ISSUES OF FACT OR LAW

Are the positions of police chief and city manager of the City of San Jacinto incompatible public offices?

## CONCLUSION

The positions of police chief and city manager of the City of San Jacinto are incompatible public offices.

## PARTIES

FRANCIS BOYKIN, JIM CONNER, and PATRICK WILLIAMS, contend that MICHAEL HANAVAN ("defendant") is unlawfully holding and exercising the office of police chief of the City of San Jacinto.

## MATERIAL FACTS

The City of San Jacinto is a general law city with a city manager form of government. The city council has appointed defendant, the city's chief of police, to hold and exercise simultaneously the position of city manager.

ANALYSIS

The common law doctrine of incompatible public offices prevents a person from holding simultaneously two public offices if the performance of the duties of either office could have an adverse effect on the other. (75 Ops.Cal.Atty.Gen. 10, 12 (1992).) In 80 Ops.Cal.Atty.Gen. 74, 75 (1997), we recently summarized the applicable rules as follows:

""Offices are incompatible, in the absence of statutes suggesting a contrary result, if there is any significant clash of duties or loyalties between the offices, if the dual office holding would be improper for reasons of public policy, or if either officer exercises a supervisory, auditory, or removal power over the other." [Citations.]

"'The policy set forth in *People* ex rel. *Chapman* v. *Rapsey* [(1940) 16 Cal.2d 636] comprehends prospective as well as present clashes of duties and loyalties. [Citation.]

""Neither is it pertinent to say that the conflict in duties may never arise; it is enough to say that it may, in the regular operation of the statutory plan." [Citation.]

""Only one significant clash of duties and loyalties is required to make offices incompatible . . . ." [Citation.] Furthermore, "[t]he existence of devices to avoid . . . [conflicts] neither changes the nature of the potential conflicts nor provides assurance that they would be employed . . . ." [Citation.] Accordingly, the ability to abstain when a conflict arises will not excuse the incompatibility or obviate the effects of the doctrine. A public officer who enters upon the duties of a second office automatically vacates the first office if the two are incompatible. [Citation.] Both positions, however, must be offices. If one or both of the positions is a mere employment as opposed to a public office, the doctrine does not apply. [Citation.]'"

We are asked to determine whether the incompatible offices doctrine prevents a city police chief from serving as the city manager. We conclude that the doctrine precludes such a combination of duties and responsibilities in the present circumstances.

The primary issue to be resolved is whether the positions in question are "public offices." In 80 Ops.Cal.Atty.Gen., *supra*, at 75-76, we summarized the elements of a public office:

". . . For the purpose of the doctrine of incompatible public offices, a public office is a position in government (1) which is created or authorized by the Constitution or some law; (2) the tenure of which is continuing and permanent, not occasional or temporary; (3) in which the incumbent performs a public function for the public benefit and exercises some of the sovereign powers of the state."

In *Schaefer* v. *Superior Court* (1952) 113 Cal.App.2d 428, 432-433, the court clarified the meaning of the phase "sovereign powers of the state":

"If specific statutory and independent duties are imposed upon an appointee in relation to the exercise of the police powers of the State, if the appointee is invested with independent power in the disposition of public property or with the power to incur financial obligations upon the part of the county or state, if he is empowered to act in those multitudinous cases involving business or political dealings between individuals and the public, wherein the latter must necessarily act through an official agency, then such functions are a part of the sovereignty of the state."

The court in *Main* v. *Claremont Unified School Dist.* (1958) 161 Cal.App.2d 189, 204, ruled similarly. These general elements of a public office have been examined and applied in various situations. (See *Dibb* v.

*County of San Diego* (1994) 8 Cal.4th 1200, 1212; 78 Ops.Cal.Atty.Gen.362, 364-365 (1995); 74 Ops.Cal.Atty.Gen. 82, 83 (1991).)

With respect to the position of police chief of a general law city, Government Code section 36501 **Footnote No. 1** provides: "The government of a general law city is vested in . . . [a] chief of police . . . ." The chief of police is in charge of the police department of a city and is authorized to appoint subordinate officers of the department. (§§ 38630, 38631.) Section 41601 states:

"For the suppression of riot, public tumult, disturbance of the peace, or resistance against the laws or public authorities in the lawful exercise of their functions, the chief of police has the powers conferred upon sheriffs by general law and in all respects is entitled to the same protection."

A sheriff undeniably holds an "office" and exercises part of the sovereign powers of the state by investigating public offenses and arresting and taking into custody those who have violated criminal laws. (See Cal. Const., art. XI, § 1, subd. (b); §§ 26600-26778; 77 Ops.Cal.Atty.Gen. 82, 85 (1994).) Accordingly, we entertain no doubt that a chief of police exercises some part of the sovereign powers of the state and holds a public office for purposes of the common law doctrine of incompatible public offices. (Cf., *Neigel* v. *Superior Court* (1977) 72 Cal.App.3d 373, 378; *People* v. *Finkelstin* (1950) 98 Cal.App.2d 545, 557-558; 10 Ops.Cal.Atty.Gen. 34, 35 (1947).)

We have also concluded that a city manager occupies a public office (80 Ops.Cal.Atty.Gen., *supra*, at 76; 51 Ops.Cal.Atty.Gen. 183, 184 (1968), as does a city administrator (22 Ops.Cal.Atty.Gen. 83, 84-86 (1953)). In 68 Ops.Cal.Atty.Gen. 337, 346 (1985), we explained the applicable principles with respect to the position of General Manager/District Administrator of a hospital district:

"Ordinarily the chief executive of a public entity, such as a local hospital district, is invested with the powers and duty to prepare a budget, incur financial obligations, make dispositions of property on behalf of the entity and generally to act for the entity in its business and political activities. In the absence of information to the contrary, we assume that is the case here. The performance of such duties constitute public functions for the public benefit and the exercise of the sovereign powers of the state. Thus we believe that the chief executive of a public entity is ordinarily a public officer under the incompatibility of public office doctrine. We qualify this statement because we have been confronted before with positions with impressive titles which we concluded were employments because little power was wielded. (See 26 Ops.Cal.Atty.Gen. 29 (1955), county administrator whose authority was limited to advice and recommendations to the board of supervisors determined to be an employee rather than an officer; 40 Ops.Cal.Atty.Gen. 238 (1962), manager of a district agricultural association, whose role was limited to that of a publicity man, was found to be an employee.) Absent information restricting the normal powers of a chief executive we assume that the General Manager/District Administrator was invested with the ordinary powers and duties of a chief executive. Thus the three elements of the Rapsey definition of public officer are present. Since the position of General Manager/District Administrator of a hospital district meets the Rapsey definition of public office, we conclude that the position is a public office for purposes of the incompatibility of public office doctrine."

The position of city manager clearly meets the tests of being a public office in that it is established by law, the tenure is permanent and continuing, and the person holding the position is vested with the power to perform a public function for the public benefit and exercises some of the sovereign powers of the state. (§§ 34851-34852.)

The only issue remaining, therefore, is whether the offices of city manager and chief of

police are incompatible. The city in question is a general law city with a city manager form of government. (§§ 34851-34859.) The powers and duties of the city manager are defined by ordinance. (§ 34851.) We have examined the city's municipal code and find that the city manager is the administrative head of the city's government, charged with the administration of all affairs of the city. Specifically, section 2.08.060 of the city code provides:

> "The city manager shall be the administrative head of the city government, under the direction and control of the city council, except as otherwise provided in this chapter. He shall be responsible for the efficient administration of all the affairs of the city which are under his control. In addition to his general powers and duties as administrative head, and not as a limitation thereof, it shall be his duty and he shall have the power:

> ". . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

> "B. To control, order and give directions to all heads of departments, subordinate officers and employees of the city . . ;

> "C. To appoint and remove any officers and employees of the city . . ;

> "D. To exercise control over all departments of the city government and over all appointive officers and employees thereof . . ;

> ". . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

> "H. To prepare and submit to the city council the annual budget and capital outlay program of the city . . ;

> "J. To make investigations into the affairs of the city, and any department and/or division thereof . . ;

> "K. To investigate any and all complaints in relation to matters concerning the administration of the city government . . ;

> ". . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ."

Section 2.08.070 of the city code further provides:

> "The city council and its members shall deal with the administrative services of the city only through the city manager, except for the purpose of inquiry. Neither the city council nor any member thereof shall give orders to any subordinate of the city manager."

Pursuant to the foregoing powers and duties, the city manager, if allowed to serve simultaneously as chief of police, would be authorized to control, order and give directions to himself, appoint and remove himself, prepare and submit his own budget to the city council, conduct investigations into the affairs of his own office, and investigate complaints in relation to matters concerning the administration of his own department. As noted at the outset, offices are incompatible "where one is subordinate to the other and subject in some degree to the supervisory power of its incumbent." (*People* ex rel. *Deputy Sheriffs' Assn.* v. *County of Santa Clara* (1996) 49 Cal.App.4th 1471, 1481; 80 Ops.Cal.Atty.Gen., *supra*, at 75.)

Manifestly, then, these two offices are incompatible. (See *People* ex rel. *Deputy Sheriffs' Assn.* v. *County of Santa Clara*, *supra*, 49 Cal.App.4th at 1484.) We find no merit in the suggestion that the offices have been or may be, by virtue of the appointment of one individual to both offices or otherwise, effectively combined or merged so that only one public office is involved. The offices were created and exist

effectively combined or merged so that only one public office is involved. The offices were created and exist by virtue of state law. (§§ 36501 [chief of police], 34851 [city manager], 34856 [city manager may appoint and dismiss chief of police].) Section 7 of article XI of the Constitution provides that a general law city "may make and enforce within its limits all local, police, sanitary, and other ordinances and regulations *not in conflict with general laws*." (Italics added.)

It is concluded that the chief of police of the City of San Jacinto may not serve simultaneously as city manager. Acceptance of the second office automatically vacates the first office.

## PUBLIC INTEREST

As a general rule, we have viewed the existence of a substantial question of fact or law as presenting a sufficient "public purpose" to warrant the granting of leave to sue. Accordingly, leave will be denied only in the presence of other overriding considerations. (81 Ops.Cal.Atty.Gen. 94, 98 (1998).) We find no countervailing considerations herein. Rather, the inhabitants of the City of San Jacinto have a paramount interest in the integrity of their public offices and officers.

Accordingly, the application for leave to sue in quo warranto is GRANTED.

\* \* \* \* \*

---

**Footnote No. 1**
All references hereafter to the Government Code are by section number only.