EDMUND G. BROWN JR. Attorney General TAYLOR S. CAREY Deputy Attorney General
THE HONORABLE ALAN LOWENTHAL, MEMBER OF THE STATE SENATE, has requested an opinion on the following questions:
1. Does Government Code section 1099 apply to members of the California HighSpeed Rail Authority?
2. If so, are the offices of Mayor of the City of Anaheim, member of the board of directors of the Orange County Transportation Authority, member of the Los Angeles County Metropolitan Transportation Authority, or member of the Southern California Regional Rail Authority incompatible with the office of member of the High-Speed Rail Authority?
3. What are the remedies available to address the holding of incompatible offices? *Page 2 
 CONCLUSIONS
1. Government Code section 1099 applies to members of the High-Speed Rail Authority.
2. The offices of Mayor of the City of Anaheim, member of the board of directors of the Orange County Transportation Authority, member of the Los Angeles County Metropolitan Transportation Authority, and member of the Southern California Regional Rail Authority are incompatible with the office of member of the High-Speed Rail Authority.
3. Under section 1099, the holder of incompatible offices is deemed to have forfeited the first office upon acceding to the second. In the event that one holding a presumptively forfeited office refuses to relinquish that office, an action in quo warranto may lie to resolve claims regarding the disputed office.
 ANALYSIS
We are asked whether Government Code section 1099, which prohibits the simultaneous holding of incompatible public offices by the same individual, applies to members of the board of the High-Speed Rail Authority (HSRA). If we conclude that it does, we are asked further to determine whether the offices of Mayor of the City of Anaheim, member of the board of directors of the Orange County Transportation Authority (OCTA), member of the Los Angeles County Metropolitan Transportation Authority (LA Metro), or member of the Southern California Regional Rail Authority (SCRRA) are compatible with the office of member of the HSRA.
For many years, the analysis of whether a single individual may hold two public offices at the same time began and ended with an examination of the common law doctrine prohibiting the holding of incompatible offices.[1] In 2005, the Legislature codified the doctrine by enacting Government Code section 1099, [2] which now governs this question.[3]
Government Code section 1099 provides that a "public officer . . . shall not *Page 3 
simultaneously hold two public offices that are incompatible."[4]
Unless "expressly authorized by law," public offices are incompatible when there is "a possibility of a significant clash of duties or loyalties between the offices,"[5] or when "public policy considerations make it improper for one person to hold both offices."[6]
In the event that one person holds two incompatible offices, the person is deemed to have forfeited the first office upon acceding to the second.[7]
For the prohibition to apply, each position in question must be a "public office," not merely "a position of employment,"[8] and there must be an "absence of statutes suggesting a contrary result."[9]
 A public office is ordinarily and generally defined to be the right, authority, and duty, created and conferred by law, the tenure of which is not transient, occasional, or incidental, by which for a given period an individual is invested with power to perform a public function for the benefit of the public. . . . The most general characteristic of a public officer, which distinguishes him from a mere employee, is that a public duty is delegated and entrusted to him, as agent, the performance of which is an exercise of a part of the governmental functions of the particular political unit for which he, as agent, is acting. . . .[10]
The requirements for finding a "public office" under the common law rule may be summarized as follows:
 For the purpose of the doctrine of incompatible public offices, a public office is a position in government (1) which is created or authorized by the Constitution or some law; (2) the tenure of which is continuing and permanent, not occasional or temporary; (3) in which the incumbent *Page 4 
performs a public function for the public benefit and exercises some of the sovereign powers of the state.[11]
Public offices may include elected or appointed memberships on governmental boards, commissions, or committees.[12]
In this case, each of the offices in question falls within the definition of a public office. Each is either an elective office (as is the Mayor of the City of Anaheim) or an appointed membership on a governmental board (as are the members of transit districts), and all of them carry some of the sovereign powers of government. We conclude, therefore, that each of the offices in question is a public office subject to the prohibitions of section 1099.
We wish to underscore that the law does not always prohibit one individual from holding more than one public office. It is the holding ofincompatible offices in the absence of a statutory exception that is enjoined. As to whether two offices are incompatible, the law does not await the occurrence of a prohibited clash before taking effect, but intercedes to prevent it. "Only one potential significant clash of duties or loyalties is necessary to make offices incompatible."[13]
Incompatibility is not based on a personal conflict of interest on the part of the office holder, but upon the potential for conflicts that may arise from the nature of the duties of each office, regardless of the good faith, honor, or integrity of the incumbent.
We begin our analysis with a brief description of the organizations and offices under consideration.
The HSRA was created by the California High-Speed Rail Act of 1996 for the purpose of developing a plan for the financing, construction, and operation of a statewide, inter-city high-speed passenger rail system.[14]
The HSRA contemplates the construction of a high-speed rail system extending from San Diego through the population centers of Southern California, continuing through the Central Valley and terminating in segments located in Sacramento and in the San Francisco Bay Area. The HSRA has recommended a phased-project approach, beginning with initial environmental studies, in order to preserve rights of way and to permit studies needed to determine train technology, to *Page 5 
finalize corridors and station locations, and to sharpen cost estimates. The HSRA is charged with directing the development and implementation of inter-city high-speed rail service that is fully integrated with existing inter-city rail and bus networks. The intercity network, in turn, is to be coordinated with local commuter rail lines and urban rail transit lines, and is to utilize common station facilities whenever possible.[15]
HSRA is governed by a nine-member board appointed by the Governor, the Senate Committee on Rules, and the Speaker of the Assembly. When making appointments to the board, the appointing authorities are required to take geographical diversity into consideration "to ensure that all regions of the state are adequately represented."[16]
The office of Mayor of Anaheim is one of five elected officers constituting the Anaheim City Council. Pursuant to section 504 of the Anaheim Charter, the Mayor has the same rights, privileges, powers, and duties as are held by other members of the City Council, and is regarded as a member of the City Council for all purposes.[17] As a Charter City, the City of Anaheim has exclusive authority over all municipal affairs within its jurisdictional boundaries.
The OCTA is a multi-modal transportation agency that began in 1991 with the consolidation of seven separate agencies. It is governed by an 18-member board of directors consisting of 5 county supervisors, 10 city members, 2 public members, and the Director of the Department of Transportation District 12 (Caltrans) as a non-voting member.[18] The OCTA provides county-wide bus and paratransit service, Metrolink rail service, commuter services, and road improvement projects.
Metrolink is the name by which the transportation system operated by the Southern California Regional Rail Authority (SCRRA) is known. SCRRA is a five-member joint powers authority. Its member agencies are the LA Metro, the OCTA, the Riverside County Transportation Commission, the San Bernardino Associated Governments, and the Ventura County Transportation Commission.
It has been suggested to us that we should construe the incompatible offices doctrine narrowly here, and that its application should be confined to situations in which one office has the authority to approve, disapprove, or otherwise control the decisions of the other office or, at a minimum, that the two offices are statutorily obligated to interact *Page 6 
with each other. It is urged that the doctrine is properly understood to refer to offices that are incompatible because their principal duties are, by law, so connected that the exercise of those duties by one office might conflict with the exercise of the principal duties of the other office.
We agree that all such circumstances fall within the ambit of section 1099. However, we do not agree that such circumstances encompass the full extent of the incompatible offices doctrine. Section 1099(a) prescribes that offices are incompatible when any of the enumerated circumstances are present. Among these, of course, at subdivision (a)(1), are offices that are structurally incompatible. But subdivision (a)(2) also prohibits the holding of dual offices whenever, "[b]ased on the powers andjurisdiction of the offices, there is a possibility of a significant clash of duties or loyalties between the offices."[19]
Our prior opinions are in accord. "Offices are incompatible if one of the offices has supervisory, auditory or removal power over the other or
if there would be a significant clash of loyalties in the performance of the duties of either office." We have consistently concluded that, "If the performance of the duties of either office could have an adverse effect on the other, the doctrine precludes acceptance of the second office. . . ."[20] Furthermore, "`the ability to abstain when a conflict arises will not excuse the incompatibility or obviate the effects of the doctrine.'"[21]
It has also been suggested to us that the clashes that may occur between the offices we are considering here are not "significant" within the meaning of the statute. We disagree. The term "significant" is not expressly defined for purposes of section 1099. Under generally accepted rules of statutory construction, we are to give words in statutes their common, ordinary meaning when they are not otherwise defined by statute. Accordingly, we interpret "significant" to mean "having or likely to have influence or effect," or "probably caused by something other than mere chance."[22] In these circumstances, both definitions carry the same import: for a clash to be "significant," it cannot be trivial and must be more certain than mere chance. In our view, the conflicts latent in these offices meet that modest standard. *Page 7 
The law requires only one potential clash for the offices to be regarded as incompatible. Long ago we noted that, "when the chances of each agency dealing with each other are substantial, the two offices are incompatible."[23] It does not require laborious investigation to recognize that the agencies involved here must of necessity deal with each other on myriad issues, and that non-trivial conflicts between them may arise. Transit jurisdictions may compete for scarce state and federal funding, or they may need to negotiate over issues such as rights-of-way, route planning, scheduling, siting of terminals and support facilities, and the terms for sharing facilities. Even where the involved agencies agree on the ultimate goals to be achieved by the high-speed rail project, the many and varying obstacles in the path to implementation invite competing solutions, which in turn invites conflict.
Our conclusion finds support in an earlier opinion on similar circumstances, in which we analyzed the competing loyalties at stake in planning for the Bay Area Rapid Transit System. In that circumstance, we concluded, "[m]embers of the boards of supervisors of the counties as well as the mayors and members of the city councils of the cities within the territorial limits of the San Francisco Bay Area Rapid Transit District may not contemporaneously hold office as director of the district."[24] We reiterated that view in a later opinion, when we concluded that an individual who was a "public member" of a regional coastal commission could no longer hold that office upon becoming a county supervisor:
 Clearly it is possible, and perhaps likely, that a county supervisor may have an entirely different responsibility in reviewing a county project on behalf of the county than in acting upon that project as a member of a regional coastal commission. Thus, it is concluded that the two offices are incompatible.[25]
We are guided by the long-established principle that one person may not serve two masters. The duties of loyalty and fidelity to the public interest — the soul of public service — cannot survive in an atmosphere in which the holder of multiple offices must disregard the interests of one constituency in order to serve the interests of another.
Finally, we have been asked what remedies are available to address a situation in which a person holds incompatible offices. Initially, Government Code section 1099 unequivocally prescribes that, in the event of incompatible offices held by the same *Page 8 
individual, the first office is deemed forfeited upon acceding to the second. When an incompatible office is not voluntarily surrendered, a question may arise as to whether the incumbent is legally entitled to continue holding it. In such an event, section 803 of the Code of Civil Procedure provides that an action in the nature of quo warranto "may be brought by the Attorney General, in the name of the people of this state, upon his own information, or upon the complaint of a private party, against any person who usurps, intrudes into, or unlawfully holds or exercises any public office." In cases where it is available, quo warranto is the exclusive remedy for trying title to an office.[26]
"Although the Attorney General occasionally brings a quo warranto action on the initiative of that office, or at the direction of the Governor, usually the action is filed and prosecuted by a private party who has obtained the consent of the Attorney General, for `leave to sue in quo warranto.'"[27]
Accordingly, we conclude that Government Code section 1099 applies to members of the High-Speed Rail Authority. Further, we conclude that the offices of Mayor of the City of Anaheim, member of the board of directors of the Orange County Transportation Authority, member of the Los Angeles County Metropolitan Transportation Authority, and member of the Southern California Regional Rail Authority are incompatible with the office of member of the High-Speed Rail Authority. And finally, under section 1099, the holder of incompatible offices is deemed to have forfeited the first office upon acceding to the second. In the event that one holding a presumptively forfeited office refuses to relinquish that office, an action in quo warranto may lie to resolve claims regarding the disputed office.
[1] See People ex rel. Chapman v. Rapsey, 16 Cal. 2d 636, 642 (1940);People ex rel. Deputy Sheriffs' Assn . v. Co. of Santa Clara,49 Cal. App. 4th 1471, 1481 (1996); 81 Ops.Cal.Atty.Gen. 344, 345
(1998).
[2] 2005 Cal. Stats. ch. 254, § 1.
[3] 89 Ops.Cal.Atty.Gen. 152 (2006).
[4] Govt. Code § 1099(a).
[5] Id. at (a)(2).
[6] Id. at (a)(3).
[7] Id. at (b).
[8] Govt. Code § 1099(c); see 58 Ops.Cal.Atty.Gen. 109, 111 (1975).
[9] 38 Ops.Cal.Atty.Gen. 113, 113 (1961); see Govt. Code § 1099(a);81 Ops.Cal.Atty.Gen. 344, 345 (1998); 78 Ops.Cal.Atty.Gen. 60, 62-63
(1995).
[10] Dibb v. Co. of San Diego, 8 Cal. 4th 1200, 1212 (1994) (citations omitted; emphasis in original).
[11] 68 Ops.Cal.Atty.Gen. 337, 342 (1985).
[12] See Govt. Code § 1099(a).
[13] 85 Ops.Cal.Atty.Gen. 199, 200 (2002) (emphasis added).
[14] Pub. Util. Code § 185000 et. seq.; 1996 Cal. Stats. ch. 796 (Sen. 1420).
[15] See Pub. Util. Code § 185030.
[16] Pub. Util. Code § 185020.
[17] See also Govt. Code § 34903.
[18] See Pub. Util. Code § 130052.
[19] Emphasis added.
[20] 85 Ops.Cal.Atty.Gen. 239, 240 (2002).
[21] 82 Ops.Cal.Atty.Gen. 74, 75 (1999).
[22] http://www.merriam-webster.com.
[23] 41 Ops.Cal.Atty.Gen. 98, 99 (1963) (emphasis added).
[24] 30 Ops.Cal.Atty.Gen. 184 (1957).
[25] 58 Ops.Cal.Atty.Gen. 808, 810 (1975).
[26] See Cooper v. Leslie Salt Co., 70 Cal. 2d 627, 633 (1969);Nicolopulos v. City of Lawndale, 91 Cal. App. 4th 1221, 1225
(2001).
[27] Nicolopulos, 91 Cal. App. 4th at 1229. *Page 1